Monica J. HUBBARD, formerly known as Monica J. Roegler, Earle S. Humphreys, and Nicette M. Humphreys On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

FIDELITY FEDERAL BANK, a Federal Savings Bank, formerly known as Fidelity Federal Savings and Loan Association, Defendant.

No. CV 92–3939 MRP.

United States District Court, C.D. California.

June 9, 1993.

910

**912**

Marie Seth Weiner, Cotchett, Illston & Petre, Burlingame, CA, George M. Plews, Peter M. Racher, Timothy J. Paris, M. Scott Barrett, Plews & Shadley, Henry J. Price, Price & Barker, Indianapolis, IN, for plaintiffs.

Martin C. Washton, Alicia J. Bentley, Gibson, Dunn & Crutcher, Los Angeles, CA, for defendant.

## OPINION

PFAELZER, District Judge.

Plaintiff Monica J. Hubbard initiated this action on July 1, 1992 by filing a class action complaint alleging violations of the Truth in Lending Act ("TILA") and Regulation Z thereto, breach of contract, and negligence. Following the hearing on defendant's Motion for Summary Judgment or Summary Adjudication of Issues ("Motion") on February 8, 1993, Hubbard filed a First Amended Class Action Complaint ("Complaint") which added plaintiffs Earle S. Humphreys and Nicette M. Humphreys as class representatives and also new claims for fraud and negligent representation. Treating defendant's Motion as a motion for summary judgment or summary adjudication as to plaintiff's First Amended Class Action Complaint, the Court issued a proposed memorandum of decision and invited the parties to comment on the memorandum at a hearing on April 29, 1993. The Court now grants summary judgment in favor of defendant.

## FACTS

On November 11, 1983, Hubbard obtained a loan from defendant Fidelity Federal Bank (the "Bank") to finance the acquisition of her home. Hubbard signed a variable rate promissory note in the principal amount of $94,000 and gave the Bank a mortgage on her home as security for the note. At approximately the same time, the Bank provided Hubbard with certain disclosures required under the Truth in Lending Act.

Hubbard's loan was an adjustable rate mortgage ("ARM") loan; i.e., the interest rate varied over the life of the loan and was subject to periodic adjustments by the Bank. Hubbard's note provided for interest rate adjustments twice every year, with the change in the interest rate becoming effective on June 1 and December 1 of each year. *Payments*, however, were adjusted once a year on January 1. Payments were due in arrears; thus, a payment adjustment was based on the interest rate adjustment made effective December 1 of the preceding year.[1]

1. For example, effective June 1, 1984, the Bank adjusted the interest rate on Hubbard's loan from 10.750 percent to 12.385 percent. The new rate of 12.385 percent was applied to the June 1, 1984 principal balance.

Effective December 1, 1984, the Bank adjusted the interest rate from 12.385 percent to 13.289 percent. The new rate of 13.289 percent was then applied to the December 1, 1984 principal balance. Hubbard's new *payment* amount was computed at the 13.289 percent rate and was in effect for the twelve monthly payments due from January 1, 1985 to December 1, 1985.

Hubbard's loan documents contained two provisions critical to this motion. The first provision stated that the interest rate was based on an index value defined as

> the *most recent* monthly weighted costs of savings, borrowings and advances by the Federal Home Loan Bank of San Francisco ("Bank") to the 11th District members of the bank based on statistics tabulated and published by the bank.

Motion, Mueller Decl., Exh. A at 29 ("Exhibit A Amendment to Deed of Trust or Mortgage and to Note") (emphasis added).[2]

The second provision stated:

NOTICE OF PAYMENT ADJUSTMENTS:

> Fidelity Federal Savings and Loan Association will send you notice of an adjustment to the payment amount at least 30 but not more than 45 days *before it becomes effective.* This Notice will contain the date and amount of payment adjustment, loan balance, change in index and interest rate, change in principal loan balance and other related information. . . .

*Id.* at 35 ("Adjustable Mortgage Loan Facts") (emphasis added).

In addition, at the time of the origination of Hubbard's loan, applicable federal regulations required lenders to give borrowers notice of adjustments to interest rates at least 30 but not more than 120 days *prior to an interest rate adjustment* immediately preceding a payment adjustment. 12 C.F.R. § 545.33(e) (1986) (48 Fed.Reg. 23,058).[3]

Over the course of Hubbard's loan, the Bank sent periodic notices to her informing her of the interest rate adjustments on her loan. From 1983 to 1991, Hubbard made timely payments on her loan; in July 1991, she paid off the loan.

In July 1991, Hubbard received a letter from LoanChek, an adjustable rate mortgage audit company, questioning the Bank's calculations of the interest rate on Hubbard's note. On or about July 3, 1991, Hubbard contacted the Bank and requested verification of the accuracy of the interest rates on her loan.

On August 22, 1991, the Bank wrote to Hubbard, stating that all interest and payment adjustments were correct. Hubbard filed this action against the Bank on July 1, 1992.

### A. Selection of Index Values

Hubbard alleges that the Bank used three different methods to select the index value upon which it based her interest rate.

#### 1. *Method 1.*

The Federal Home Loan Bank ("FHLB") releases its monthly cost-of-funds index on or near the last business day of every month. For the June 1, 1984 interest rate adjustment, the Bank selected the index value released by the FHLB on May 25, 1984. Thus, that value, 10.135, was the monthly figure "most recent" to the interest rate adjustment date.[4] According to Hubbard, this method of selecting an index value was consistent with the initial disclosures set forth in her loan documents. Plaintiff's Opposition at 8.

#### 2. *Method 2.*

According to Hubbard, for the second interest rate adjustment, effective December 1, 1984, the Bank used a second method of selecting an index value. FHLB released an

---

2. The Federal Home Loan Bank releases its monthly cost of funds index on or near the last business day of every month.

3. 12 C.F.R. § 545.33(e) (1986) provided:
At least 30 but not more than 120 days prior to an adjustment . . ., an association shall provide the borrower with notice of the adjustment or of maturity. However, where the loan contract provides that changes in the interest rate shall occur more frequently than changes in the payment, the association need not notify the borrower of changes in the rate, nor of changes in the loan balance or term resulting from a rate change, until notice of a payment adjustment is given. (For purposes of notification, a payment adjustment is considered to occur as of the date of the interest-rate change immediately preceding the due date of the adjusted payment.)

4. Under the loan contract's notice provision and 12 C.F.R. § 545.33(e) (1986), Fidelity was *not* required to give notice of this interest rate adjustment.

index value of 10.994 on November 30, 1984. Opposition, Exh. C. Rather than using this figure, which would have been consistent with Method 1, the Bank used the index released on October 26, 1984. This value was 11.039 and resulted in a higher interest rate than Hubbard would have been charged under Method 1.

### 3. *Method 3.*

Hubbard alleges further that in the fall of 1986, the Bank used a third method of selecting an index value.[5] For the January 1, 1987 payment adjustment, the Bank adjusted the interest rate effective December 1, 1986. Instead of using the index value "most recent" to the interest rate adjustment date (Method 1), or using the preceding month's index value (Method 2), the Bank looked back sixty-some days to the index value released by the FHLB on September 29, 1986. In effect, it used the index value "most recent" to the notice period required by the loan documents—30 to 45 days prior to the interest rate adjustment date which was December 1, 1986. The Bank used this method for the remaining term of Hubbard's loan. The Bank contends that it was justified, under the loan contract provisions and the regulations, in using this method for determining Hubbard's interest rate.

### B. *Plaintiffs Humphreys*

In the First Amended Complaint, Hubbard adds Earle S. Humphreys and Nicette M. Humphreys as class representatives in an attempt to cure any statute of limitations problems inherent in the initial complaint. The Humphreys obtained an ARM loan from defendant for $152,000 principal and gave the Bank a mortgage on their home on February 7, 1986. The Humphreys' note contained terms identical to Hubbard's concerning adjustment of the interest rate, except that the changed interest rate was to become effective on September 1 and March 1 of each

year, and payments were to be adjusted every six months on October 1 and April 1. In addition, the Humphreys' note provided that the interest rate would not increase or decrease by more than 1.0 percent every six months.[6]

Plaintiffs allege that the Bank failed to use the index "most recent" to the interest rate adjustment date for the Humphreys' first interest rate adjustment, effective September 1, 1986, and that the Bank also changed its method for the second interest rate adjustment, effective March 1, 1987. According to plaintiffs, the Bank's last erroneous interest rate adjustment for the Humphreys' loan occurred on September 1, 1992. The Humphreys paid off their loan in November 1992.

### ANALYSIS [7]

Plaintiffs bring claims for violation of the Truth in Lending Act and Regulation Z, breach of contract, negligence, fraud, and negligent misrepresentation. Plaintiffs' TILA and breach of contract claims rest on two distinct and contradictory theories. With respect to their TILA claim, plaintiffs argue that the Bank's loan documents failed to specify the date to which the index value was to be "most recent" and therefore the Bank violated TILA provisions requiring disclosures in conjunction with consumer loans. With respect to their breach of contract claim, however, plaintiffs argue that the loan documents *did* specify the date to which the index was to be "most recent"—the effective date of the interest rate adjustment—and that the Bank breached the loan contract by failing to select the appropriate index.

Plaintiffs cannot prevail on both of these theories in the same lawsuit. The loan contract must first be interpreted. If plaintiffs' interpretation is correct, there has been an adequate disclosure of the loan terms under TILA; if defendant's interpretation is correct, it is clear that there has not been an

---

**5.** The Bank acknowledges that it changed the method of selecting an index value for the January 1, 1987 payment. Motion at 19 n. 10.

**6.** Hubbard's note provided that her interest rate would not increase or decrease more than 5.000 percent over the life of the loan.

**7.** The facts regarding the Humphreys' loan are virtually identical to those regarding Hubbard's loan. For simplicity, the Court will analyze plaintiffs' claims primarily with respect to Hubbard, noting where the analysis differs for the Humphreys' loan.

adequate disclosure. Put differently, if, after interpreting the loan contract, the Court finds a breach of contract, it cannot find a TILA violation, and if it finds a TILA violation, it cannot find a breach of contract. Upon interpreting the loan documents in light of applicable regulations, the Court finds that plaintiffs' TILA claims have merit, but their breach of contract claims do not.

> The loan documents require the following:
> (1) the Bank must select the "most recent" monthly index;
> (2) the Bank must send notice of an adjustment to the payment amount "at least 30 but not more than 45 days before it becomes effective"; and
> (3) the notice must set forth the new index value and interest rate as well as the change in the principal loan balance.

In addition, the regulations in effect at the time of the origination of Hubbard's loan required the Bank to provide Hubbard with notice of an adjustment to her interest rate at least 30 but not more than 120 days before its effective date, where the interest rate adjustment immediately preceded a payment adjustment.[8] *See* 12 C.F.R. § 545.33(e) (1986). The loan documents and the regulations create three significant dates: the notice date, the effective date of the interest adjustment, and the payment date.

■ The requirements of the loan documents *and* the regulations must all be reconciled in reaching a reasonable interpretation of the loan contract. According to Hubbard's loan documents, payments are adjusted on January 1, based on the interest rate adjustment which became effective on December 1. Under the regulations, the Bank must send Hubbard notice of an interest rate adjustment at least 30 but not more than 120 days before the adjustment becomes effective on December 1, and, under the loan contract, the Bank must send notice of an adjustment to the payment amount at least 30 but not more than 45 days before the interest rate adjustment becomes effective.[9] Thus, under both the regulations and the loan contract, the Bank was required to send Hubbard notice of the interest rate adjustment no later than November 1, and the notice must contain the new index value and interest rate. In order to send Hubbard such a notice, the Bank must review the applicable index no later than November 1. Thus, it must select the index value published in October or earlier. Since the FHLB publishes its index values on or near the last business day of the month, for all practical purposes, it would appear to be unworkable for the Bank to select a review date which used the October index in making the adjustment. The calculation required in the November notice would have to be made almost overnight if the October index were employed.

Plaintiffs' approach, which would require the Bank to select a review date that would result in the use of the November index—the index "most recent" to the effective date of the interest rate adjustment which is December 1—is rendered unworkable by the notice requirement of 12 C.F.R. § 545.33(e). Even if the notice requirement in the regulation

---

8. *I.e.*, at least 30 but not more than 120 days before December 1.

9. At the April 29, 1993 hearing on the Court's proposed memorandum of decision, it became apparent that the central issue in construing the loan contract is the meaning of the requirement that the Bank "will send [the borrower] notice of an adjustment to the payment amount at least 30 but not more than 45 days *before it becomes effective.*" Motion, Mueller Decl., Exh. A at 35 ("Adjustable Mortgage Loan Facts") (emphasis added). The Court's view is that the payment adjustment "becomes effective" on the date the interest rate adjustment becomes effective (December 1)—not, as plaintiffs contend, on the date the new payment amount becomes due and payable (January 1). Because payment is due in arrears, the new payment amount which applies from January 1, 1985 to December 1, 1985, for example, is based on the interest rate adjusted on December 1, 1984 and applied to the December 1, 1984 principal balance. In other words, the new payment amount includes interest for the period from December 1, 1984 to January 1, 1985 and therefore actually "becomes effective" on December 1, 1984.

Plaintiffs' interpretation would nullify the requirement that the borrower be given notice of the adjustment to the payment amount before it takes effect, presumably in order to give the borrower an opportunity to refinance the loan. Obviously, a "notice" would not accomplish its purpose if the borrower were already obligated to make payments based on the new rate announced in it.

did not exist, plaintiffs' approach still is unworkable if effect is to be given to the notice provisions of the loan documents. According to plaintiffs' approach, the Bank was obligated to review the applicable index one day and on the next day adjust the interest rate and the payment amount, and send Hubbard the requisite notice of all the changes in the loan calculations.

The Bank's approach, according to which it adjusted the interest rate on December 1 based on the index value published by the FHLB some sixty days earlier, in September, allows the Bank to comply reasonably with the notice provisions of the loan contract and the regulations. This approach also gives effect to the provision in the loan contract requiring the Bank to select the "most recent" index, by defining that index as the one published "most recent[ly]" to the 30- to 45-day notice period required by the loan contract.

■■ In sum, the loan contract cannot be interpreted in the manner urged by plaintiffs if the notice provisions of the regulations or the loan documents are also to be given effect. Only the Bank's interpretation is reasonable, and under that interpretation, there is no breach shown. Thus, plaintiffs cannot state a claim for breach of contract based on the theory that the Bank failed to select the index value "most recent" to the interest rate adjustment date. However, plaintiffs do appear to state a claim for violation of TILA based on the theory that the Bank's loan documents failed to indicate clearly the date to which the index value was required to be "most recent."

## I. *Summary Judgment*

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) "mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Id.*

## II. *TILA*

■ The Truth in Lending Act was enacted to ensure "a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). TILA is to be construed liberally in favor of borrowers. *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 898 (3rd Cir.1990).

■ TILA establishes a system of strict liability in favor of consumers and a lender "who fails to comply with TILA in any respect is liable to the consumer under the statute regardless of the nature of the violation or the creditor's intent." *Id.* "'[O]nce the court finds a violation, no matter how technical, it has no discretion with respect to liability.'" *Id.* (quoting *Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir.1976)). The lender may be held liable even if the borrower fails to prove that she was deceived or suffered damages. *Brown v. Marquette Savings & Loan Ass'n*, 686 F.2d 608, 614 (7th Cir.1982); *Wright v. Tower Loan of Mississippi, Inc.*, 679 F.2d 436, 445 (5th Cir. 1982).

■ To implement TILA, Congress "delegated expansive authority to the Federal Reserve Board to elaborate and expand the legal framework governing commerce in credit." *Smith*, 898 F.2d at 899. The Federal Reserve Board in turn issued regulations commonly referred to as "Regulation Z," 15 U.S.C. § 1604(b), and "Official Staff Commentary," 12 C.F.R. Part 226, Supp. I, (the "Commentary"), interpreting Regulation Z. Regulation Z and the Commentary are entitled to substantial deference and are dispositive unless demonstrably irrational. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980).

■ Regulation Z provides that a creditor must make the disclosures required by TILA "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17. Regulation Z also requires

"full and meaningful disclosure" without "the necessity of assumptions on the part of a consumer." *Pennino v. Morris Kirschman & Co.,* 526 F.2d 367, 372 (5th Cir.1976). In particular, when making an adjustable rate mortgage loan, a lender must be sufficiently definite and certain in specifying the terms of the loan so that the parties can readily ascertain the precise extent of their obligation at any given time. *Preston v. First Bank of Marietta,* 16 Ohio App.3d 4, 473 N.E.2d 1210, 1214 (Ohio App.1983).

### A. Initial Disclosures

Defendant seeks summary judgment or summary adjudication as to plaintiffs' contention that the Bank violated Regulation Z, 12 C.F.R. §§ 226.18 and 545.33, by failing in its initial disclosures to specify the circumstances under which Hubbard's interest rate would increase. Summary judgment must be denied with respect to this issue.

When Hubbard obtained her loan from the Bank in 1983, the rules governing disclosure for adjustable rate mortgage transactions were set forth in 12 C.F.R. § 226.18(f)(1)–(4) (1983). That rule required full disclosure of (1) "[t]he circumstances under which the rate may increase," (2) "[a]ny limitations on the increase," (3) "[t]he effect of an increase," and (4) "[a]n example of the payment terms that would result from an increase." Plaintiffs argue that by failing to explain the method by which the Bank was to select an index value, the Bank violated the requirement that it disclose "[t]he circumstances under which the rate may increase." 12 C.F.R. § 226.18(f)(1).

In response, the Bank argues simply that no authority required it to disclose the review date. The Court disagrees. As plaintiffs point out, it is difficult to imagine an element of an adjustable rate loan more relevant to "the circumstances under which the rate may increase" than a disclosure of the method by which the Bank selects an index value. The Bank all but admits that the loan documents did not specify a particular review date. The loan contract was not "sufficiently definite and certain" and did not "adopt a standard by which the parties c[ould] readily ascertain the extent of their obligation at any

given time." *See Preston,* 473 N.E.2d at 1214. Thus, the Bank violated 12 C.F.R. § 226.18(f)(1).

Defendant also failed to comply with 12 C.F.R. § 545.33(f)(7) (1986), which provided that

> [i]f the interest rate, the payment, the loan balance or the term to maturity may be adjusted, [the disclosure material provided to an applicant shall include] a full explanation of how the adjustments may be made, including identification of the index(s) to be used and how index values may be obtained by the borrower, and how the adjustment of one item may affect the others.

In addition, 12 C.F.R. § 545.33(f)(11) required that the lender provide to the borrower "[a]n example of the interaction of all variable features of the loan over any period of time."

The Bank's disclosure statement explained that Hubbard's interest rate would be determined by an index defined as "[t]he most recent average cost of funds to FSLIC-insured savings and loan associations for the 11th Federal Home Loan Bank District as computed by the Federal Home Loan Bank of San Francisco and made available by the Bank in news or other releases such as the monthly Federal Home Loan Journal." Motion, Mueller Decl., Exh. B at 35. However, it should be apparent from the above discussion that the phrase "most recent" was at best unclear, and the loan documents elsewhere failed to indicate how the index would be selected. Perhaps in an attempt to comply with 12 C.F.R. § 545.33(f)(11), the Bank provided a "hypothetical example" of "possible changes in the index, interest rate, [and] payment amount," but the example did not explain how the index value was to be determined. Motion, Mueller Decl., Exh. B at 33.

■ The Bank violated Regulation Z by failing to disclose, in the documents initially provided with Hubbard's adjustable rate mortgage loan, the circumstances under which the rate might increase with sufficient specificity to allow Hubbard to ascertain the extent of her obligation at any given time.

Summary judgment must be denied as to this claim.[10]

### B. Subsequent Disclosures—12 C.F.R. § 226.17(c)(1)

■ Next, defendant seeks summary judgment or summary adjudication as to plaintiffs' claim that the Bank violated 12 C.F.R. § 226.17(c)(1) (1983) by adjusting Hubbard's loan in a manner inconsistent with her note. Summary judgment must be granted as to this issue.

12 C.F.R. § 226.17(c)(1) provides that disclosures for closed-end credit "shall reflect the terms of the legal obligation between the parties." Plaintiffs contend that the Bank violated this requirement because it failed to provide a new, full set of disclosures when it adjusted Hubbard's interest rate in a manner inconsistent with the initial disclosures accompanying her loan.

Plaintiffs' contention lacks merit. The Bank did not adjust Hubbard's interest rate in a manner inconsistent with the initial disclosures accompanying her loan. Like their breach of contract claim, plaintiffs' claim under 12 C.F.R. § 226.17(c)(1) rests on the theory that the Bank was obligated to select the index value "most recent" to the interest rate adjustment date. As discussed above, plaintiffs' approach is unworkable. Furthermore, also as discussed above, the loan documents failed to specify a review date or otherwise indicate how the Bank would select an index value.[11] Thus, the Bank's interest rate adjustments and accompanying disclosures were consistent with "the legal obligation between the parties," and the Bank did not violate 12 C.F.R. § 226.17(c)(1).

### C. Subsequent Disclosures—12 C.F.R. § 226.20

Defendant also seeks summary judgment or summary adjudication as to plaintiffs' claim that the Bank violated 12 C.F.R. § 226.20 (1984) by failing to provide new disclosures to Hubbard when it increased the interest rate on her loan. Summary judgment must be denied with respect to this issue.

■ At the time Hubbard's loan closed, the Official Staff Commentary § 226.20(a) provided as follows:

1. *Definition.* A refinancing is a new transaction requiring a complete new set of disclosures. . . .

3. *Variable-rate.* If a variable-rate feature was properly disclosed under the Regulation, a rate change in accord with those disclosures is not a refinancing. . . . However, even if it is not accomplished by the cancellation of the old obligation and substitution of a new one, a new transaction subject to new disclosure results if the creditor either:

—Increases the rate based on a variable-rate feature that was not previously disclosed, or

—Adds a variable-rate feature to the obligation.

12 C.F.R. Part 226, Supp. I, § 226.20(a) (1984). Under this provision, a lender is obligated to provide new disclosures if the variable-rate feature was not properly disclosed in accordance with Regulation Z, and the lender (1) increases the rate based on a variable-rate feature that was not previously disclosed or (2) adds a variable-rate feature to the obligation. *See Nash v. First Finan-*

---

**10.** The Bank contends that its disclosures are presumed to have complied with Regulation Z because the initial loan documents provided to Hubbard are virtually identical to the model forms promulgated by the Federal Reserve Board in Regulation Z. *See* 15 U.S.C. § 1604(b).

Although some of Fidelity's loan documents followed the model forms, not all of them did. The "Notice of Right to Cancel," Motion, Exh. B at 30, is almost identical to model form H–9. *See* Defendant's Appendix of C.F.R. Citations, at 23. The "Federal Truth in Lending Disclosure Statement," Motion, Mueller Decl. Exh. B at 31, is very similar to model form H–1. *See* Defen-

dant's Appendix, at 19–20. However, the forms relevant to the issue of the adjustable rate are not model forms and do not correspond to any of the model forms in C.F.R. Appendix H. *See* Motion, Mueller Decl., Exh. B at 33–35; Defendant's Appendix, at 19–28.

**11.** Plaintiffs have acknowledged this in their discussion of the previous issue, with respect to which they argued that the Bank's failure to specify the review date made it impossible for Hubbard to ascertain her interest rate at any given time.

*cial Savings & Loan Ass'n,* 703 F.2d 233, 236 & n. 5 (7th Cir.1983).

■ Here, it is undisputed that the Bank changed its method of selecting an index for administering Hubbard's loan. In doing so, it "increase[d] the rate based on a variable-rate feature that was not previously disclosed," and also "add[ed] a variable-rate feature to the obligation." [12] Hence, it was obligated to provide a new set of disclosures under 12 C.F.R. § 226.19. The Bank does not dispute that it failed to do this. In addition, each time the Bank increased Hubbard's interest rate thereafter, it again "increase[d] the rate based on a variable-rate feature that was not previously disclosed" and violated the regulation.[13]

## D. Statute of Limitations

Despite their merit, all of Hubbard's and most of the Humphreys' TILA claims are barred by the statute of limitations. Because the analysis differs for Hubbard and the Humphreys, the Court will discuss their claims separately.

### 1. Hubbard.

An action under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). This Circuit has held that the limitations period in this section runs, as a general rule, from the date of consummation of the transaction but that the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action.... The district courts ... can evaluate specific claims of ... equitable tolling to determine if

the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

*King v. State of California,* 784 F.2d 910, 915 (9th Cir.1986), *cert. denied,* 484 U.S. 802, 108 S.Ct. 47, 98 L.Ed.2d 11 (1987).

■ Hubbard's loan was consummated in November 11, 1983. The Bank provided her with notice of her last interest rate change, effective June 1, 1991, on or before May 1, 1991. Hubbard filed this action on July 1, 1992. Hence, the statute of limitations bars any TILA claim based on flaws in the initial disclosures provided with Hubbard's loan documents; it also bars any claims based on subsequent disclosures or the failure to make disclosures in conjunction with interest rate changes. *See Nash,* 703 F.2d at 238 (if the TILA violation is a faulty disclosure statement, the action must be brought within one year of its issuance); *Sutliff v. County Savings & Loan Co.,* 533 F.Supp. 1307, 1310 (N.D.Ohio 1982) (court granted lender's motion for summary judgment on TILA claim because the increase in the interest rate occurred more than one year before plaintiffs filed their lawsuit).

In addition, Hubbard has failed to demonstrate that the facts of her case support equitable tolling.

#### a) Equitable tolling.

Hubbard states that she did not discover the anomalies in the Bank's servicing of her loan until July 1, 1991, when she received LoanChek's letter. She then contacted the Bank on or about July 3, 1991, requesting verification of the accuracy of her adjusted interest rates. Therefore, she argues, the earliest she could be required to file her

---

**12.** As plaintiffs note, the term "variable-rate feature" is not further defined in the Official Staff Commentary § 226.20(a)–3. Applying common sense, however, the method of determining the index value upon which an interest rate is based is a "feature" of a variable-rate loan. Furthermore, in defining the phrase "variable-rate program" in the Commentary, the Federal Reserve Board indicated that "rules relating to changes in the index, interest rate, payments, and loan balance" are "loan features." *See* Official Staff Commentary to § 226.19(b)(2)–2 (effective Dec. 28, 1987), Opposition, Exh. J.

**13.** Defendant concedes that 12 C.F.R. § 226.-20(a)–3 requires subsequent disclosures in certain cases, but argues that this provision applies only when the prior variable-rate feature was not properly disclosed to the borrower. Defendant is correct in stating that this section does not apply if proper disclosures have been made at the origination of the loan. *See Herbst v. First Federal Savings & Loan Ass'n,* 538 F.2d 1279, 1282 (7th Cir.1976); *Nash,* 703 F.2d at 236 & n. 5. Here, however, the Bank failed to make proper disclosures in Hubbard's initial loan documents.

action was one year after she was first informed that there were possible "anomalies" or errors in her loan. Hubbard cites no authority for this position.

■ Defendant is correct when it argues that equitable tolling requires fraudulent concealment, which in turn requires fraudulent intent, and that a failure to disclose does not automatically constitute fraudulent concealment.

In *Chevalier v. Baird Savings Ass'n*, 371 F.Supp. 1282, 1284 (E.D.Pa.1974), plaintiffs attempted to avoid the one-year bar of section 1640(e) by arguing that "the statute of limitations was tolled by the application of the federal fraudulent concealment rule ... which tolls the statute as long as the fraud is concealed, or the defendant is under a duty to disclose certain facts and fails to." Claiming that TILA created a duty to disclose, plaintiffs argued that the failure to disclose automatically tolled the statute of limitations. *Id.* The court rejected this argument and stated:

> To apply the doctrine of fraudulent concealment in such a way would be to nullify the statute of limitations established in 1640(e). Either that provision would be meaningless, or else plaintiffs would have us believe that a violation occurs only when the requisite disclosures are eventually made, or discerned. This certainly would square with no common understanding of the word "violation."

*Id.* The court held that to demonstrate fraudulent concealment, plaintiffs must specifically allege scienter or fraudulent intent on the part of the Bank in preventing the requisite disclosure from being made. *Id.* at 1284–85. In *In re Woolaghan*, 140 B.R. 377, (Bankr.W.D.Pa.1992), the court held that the borrowers' TILA claim was barred by the statute of limitations and stated:

> In order for the Debtors to successfully argue the equitable tolling doctrine, "[they] must show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, [they] were unable to discover that conduct." No reason for equitable tolling exists in the instant case where there was no allegation or evidence of fraudulent concealment of materi-

al facts and where the Debtors had reasonable opportunity to discover the exact nature of their loan.

> Furthermore, ... this court would not be persuaded by the argument that the one-year statute of limitations should not begin to run until a reasonable person would have been put on notice of the facts constituting a TILA claim.

*Id.* at 382–83 n. 5 (quoting *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir.1986)). *See also Hughes v. Cardinal Fed. Savings & Loan Ass'n*, 566 F.Supp. 834, 834–35 (S.D.Ohio 1983) ("The fraudulent concealment doctrine therefore requires more than mere non-disclosure. Otherwise the one-year statute of limitations would be tolled in almost every [TILA] action in which a non-disclosure was found and the statutory limitations provision would be a nullity. We conclude that Congress did not intend such a result"; granting summary judgment on statute of limitations ground); *Sutliff v. County Savings & Loan Co.*, 533 F.Supp. at 1310 (in order for the doctrine of fraudulent concealment to be applicable to a TILA claim, "there must be a fraudulent intention to prevent the disclosure"); *Jones v. Transohio Savings Ass'n*, 747 F.2d 1037, 1042 (6th Cir.1984) (plaintiff alleged fraudulent concealment).

■ Here, the Bank did not conceal the interest rate adjustment information from Hubbard. The Bank provided her with notices of the adjustments to her loan rate once a year which indicated the index value that was being used to modify the variable rate. For purposes of the statute of limitations, these notices provided Hubbard with a reasonable opportunity to discover what she alleges to be a non-disclosure. Hence, Hubbard's TILA claims are all barred by the statute of limitations.

2. *The Humphreys.*

■ The Humphreys obtained their loan on February 7, 1986 and paid it off in November 1992. Thus, the statute of limitations bars the Humphreys' claim that the Bank violated Regulation Z, 12 C.F.R. §§ 226.18 and 545.33, by failing in its initial

disclosures to specify the circumstances under which their interest rate would increase.

■ With respect to the Humphreys' TILA claims under 12 C.F.R. § 226.17(c)(1) and 12 C.F.R. § 226.20, the statute of limitations bars any recovery based on the Bank's failure to provide subsequent disclosures prior to July 1, 1991.

The statute of limitations does not preclude the Humphreys from bringing claims under 12 C.F.R. § 226.17(c)(1) and 12 C.F.R. § 226.20 for the Bank's failure to provide subsequent disclosures after July 1, 1991. However, as discussed above, the Court has determined that plaintiffs' claims under 12 C.F.R. § 226.17(c)(1) lack merit. With respect to 12 C.F.R. § 226.20, Humphreys' claims are all based on events which occurred before July 1, 1991. This regulation applies if a lender (1) "[i]ncreases the rate based on a variable-rate feature that was not previously disclosed" or (2) "[a]dds a variable-rate feature to the obligation." 12 C.F.R. § 226.-20(a) (1984); *see Nash*, 703 F.2d at 236 & n. 5; *see also Herbst v. First Federal Savings & Loan Ass'n*, 538 F.2d 1279, 1282–83 (7th Cir.1976). According to plaintiffs' allegations, the Bank did not add a variable-rate feature to the Humphreys' loan—*i.e.*, it did not change the method of adjusting the interest rate—after July 1, 1991. It also did not increase the Humphreys' interest rate after July 1, 1991.[14] Thus, the statute of limitations bars Humphreys' TILA claims under 12 C.F.R. § 226.20 as well.

Finally, the Humphreys also have shown no basis for equitable tolling. Thus, the statute of limitations bars the Humphreys'

TILA claims, with the exception of claims after July 1, 1991 for violations of 12 C.F.R. § 226.17(c)(1). These claims, however, lack merit for the reasons discussed above.

### III. *Breach of Contract*

As discussed earlier, plaintiffs' breach of contract claim is based on the theory that the loan documents required the Bank to select the index value "most recent" to the interest rate adjustment date. By failing to select that date, plaintiffs argue, the Bank breached its contract.

As discussed above, plaintiffs cannot prevail on both their TILA claim *and* their breach of contract claim. If the loan documents failed to indicate the meaning of "the most recent monthly index," then plaintiffs can state a claim for violations of TILA but not for breach of contract. If the loan documents did indicate the meaning of "the most recent monthly index" and the Bank failed to select this index, then plaintiffs have a claim for breach of contract but not for violations of TILA. In support of their breach of contract claim, plaintiffs choose to argue that the meaning of "the most recent monthly" index was clear. Plaintiffs explain that the loan documents required the Bank to do two things: (1) to select "the most recent monthly" index in adjusting plaintiffs' loans, and (2) to provide plaintiffs with notice of an adjustment to the payment amount at least 30 but not more than 45 days before it became effective. Therefore, plaintiffs argue, the Bank was required to select an index value within the period 30 to 45 days prior to the payment date.

---

14. The interest rate on the Humphreys' loan decreased after July 1, 1991. For the Humphreys' payment effective 4/1/91, the interest rate was 10.294 percent. For the payment effective 10/1/91, the rate decreased to 9.579 percent; for the payment effective 4/1/91, it decreased to 8.664 percent. *See* Defendant's Opposition to Plaintiff's Motion for Leave to Amend, Mueller Decl., Exh. A.

At the April 29, 1993 hearing on the Court's proposed memorandum of decision, plaintiffs took issue with the Court's literal interpretation of the term "increase" in 12 C.F.R. § 226.20(a). According to plaintiffs, the fact that each new interest rate after July 1, 1991 was lower than the last does not mean that the Bank did not

"increase" the interest rate. From the borrower's perspective, plaintiffs argued, an interest rate has been "increased" if it does not decrease to the full extent required by the loan contract.

The Court disagrees. *See Nash*, 703 F.2d 233 (interpreting "increase" literally with respect to variable rate mortgage loans); *Herbst*, 538 F.2d 1279 (same). Even assuming *arguendo* that plaintiffs' definition of "increase" is correct, the result is the same. As discussed earlier, the Bank adjusted the Humphreys' loan according to a reasonable interpretation of the contract. Thus, this is not a situation in which the interest rate has "increased" by failing to decrease to the full extent required by the loan contract.

Plaintiffs are incorrect for two reasons. First, the contract nowhere states or implies that the date of the applicable index value must fall within the notice period. Second, as discussed above, plaintiffs' interpretation is unreasonable because it is unworkable. The Bank could not provide the calculations in the notice required by the contract and the regulation if it had to select the index value "most recent" to the effective date of the interest rate adjustment.

■ Contracts must be interpreted in a manner which renders them capable of performance. Cal.Civ.Code § 1643 ("A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."); *In re Whitney*, 71 Cal.App.3d 179, 139 Cal.Rptr. 324, 326 (1977). The Bank's position that it was justified in selecting the index value published approximately sixty-five days before the interest rate adjustment date provides a reasonable interpretation of the contract in light of the applicable regulation. It gives effect to the notice provision of the contract, as well as the provision requiring it to select "the most recent monthly" index, by defining that index as the index most recent to the 30– to 45–day notice period. Defendant is entitled to summary judgment as to plaintiffs' breach of contract claim.[15]

### IV. *Negligence*

■ Plaintiffs bear the burden of demonstrating the existence of a genuine issue of fact as to their negligence claim. *See McCabe v. General Foods Corp.*, 811 F.2d 1336, 1340 (9th Cir.1987). Plaintiffs have not done so. Furthermore, because the relationship between the Bank and plaintiffs is not a fiduciary one, plaintiffs have failed to allege sufficient facts to demonstrate negligence in a commercial transaction such as the one at issue here. Defendant is entitled to summary judgment on plaintiffs' negligence claim.

### V. *Fraud and Negligent Misrepresentation*

Plaintiffs' fraud and negligent misrepresentation claims are based on the contention that the Bank failed to inform borrowers about its "switch in its interest rate adjustment procedures" and the fact that it was not computing interest rates based upon the "most recent" index values. Plaintiffs have failed to raise a genuine issue of fact as to these claims.

■ As discussed above, the loan documents failed to define the term "most recent." Plaintiffs' interpretation—that the Bank was to use the index value immediately preceding the interest rate adjustment date—is unreasonable. The Bank's approach, on the other hand, was based on a reasonable interpretation of the contract. Thus, plaintiffs have not shown that the Bank failed to use the "most recent" index value. Furthermore, in the payment adjustment notices it sent to borrowers, the Bank disclosed all review dates, index values, and interest rate changes. *See* Defendant's Motion, Mueller Decl., Exh. F. Thus, plaintiffs have failed to state claims for fraud and negligent misrepresentation.

### CONCLUSION

With the exception of the Humphreys' claim under 12 C.F.R. § 226.17(c)(1), plaintiffs' TILA claims are barred by the statute of limitations. However, the Humphreys' claim under 12 C.F.R. § 226.17(c)(1) lacks merit.

Plaintiffs have failed to demonstrate the existence of a genuine issue of fact as to their claims for breach of contract, negligence, fraud, and negligent misrepresentation. De-

---

15. Plaintiffs also contend, in contradiction to what seems to be their primary argument, that the phrase "most recent" was ambiguous. Thus, plaintiffs argue, the Bank should be bound by its initial interpretation of the ambiguous term; because it changed its method of adjusting Hubbard's loan, the Bank is liable for breach of contract.

Requiring the Bank to select the index value "most recent" to the interest rate change date would force it to violate the notice provision of the contract and the regulations. The Court cannot enforce such an interpretation of the contract. *See* Cal.Civ.Code § 1643; *In re Whitney*, 139 Cal.Rptr. at 326.

fendant's motion for summary judgment is granted on these claims.