Robert MULLIGAN, et al., Plaintiffs,

v.

RESOLUTION TRUST CORPORATION, et al., Defendants.

Civ. A. No. 94–2607 (JR).

United States District Court,
D. Columbia.

Oct. 11, 1995.

Patrick G. Merkle, Washington, DC, for plaintiffs.

Joseph Henry Green, Jr., Silver Spring, MD, for defendants.

## MEMORANDUM

ROBERTSON, District Judge.

Plaintiffs, who executed a note and a deed of trust to secure a mortgage loan made to them sixteen years ago, now assert that the lender violated truth in lending laws and sue for damages and equitable relief. Defendant Resolution Trust Corporation moves for summary judgment for failure to state a claim upon which relief may be granted, asserting the affirmative defenses of immunity and statute of limitations. Intervenor/defendant Boatmen's National Mortgage, Inc. has joined the RTC motion.

After reviewing the arguments and materials submitted by the parties and hearing oral argument, I have concluded that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law.

## FACTS

On June 20, 1979, plaintiffs Robert and Eileen Mulligan borrowed $275,000 from The National Bank of Washington in connection with their purchase of a home in Potomac, Maryland. They executed three documents of interest to this case. The first was a note promising to pay the principal sum of $275,000

"with interest on the unpaid principal balance from the date of this Note, until paid, at the rate of ten and one-half (10½%) percent per annum. Principal and interest shall be payable ... in consecutive monthly installments of Two Thousand Four Hundred seventy-eight and 57/100ths dollars (U.S. $2478.57).... Such monthly installments shall continue until the entire indebtedness evidenced by this Note is fully paid, except that *any remaining indebtedness, if not sooner paid, shall be due and payable on July 1, 2004.*" (Emphasis added.)

The second document was a deed of trust reciting the existence of the note and describing it as a note date June 20, 1979 in the principal sum of $275,000 "with interest thereon, providing for monthly installments of principal and interest, with *the balance of the indebtedness, if not sooner paid, due and payable on July 1, 2004....*" (Emphasis added.)

The third document, without which this lawsuit would not exist, is a Federal Truth In Lending Disclosure Statement. This document indisputably contains a mistake. It describes a

"Real Estate Note ... for $275,000.00 ... payable in 300 consecutive payments of $2,478.57 each, including interest, commencing on the 1st of August 1979 and due thereafter on the 1st day of each succeeding month, with the entire balance being due and payable on the 1st day of July 2004. *If a balloon payment is involved, it is in the amount of $ none....*" (Emphasis added.)

The TILA statement recites that the amount of the loan is $275,000, that the finance charge is $468,571 (described as interest at 10.50 percent per annum), and that the total of payments is $743,571.

The Mulligans made monthly principal and interest payments of $2,478.57 for nearly 14 years. On August 1, 1993, they refinanced their mortgage. At that time, they were sending their mortgage payments to National Mortgage Company.[1] NMC provided them

---

1. The note had several owners between June 1979, when the Mulligans executed their note and their mortgage to The National Bank of Washington, and August 1993, when they discovered that the scheduled payments of principal and interest would not fully amortize the loan over 25 years and that a balloon payment would have to be made. The NBW became insolvent and was taken over by the Federal Deposit Insurance Corporation as receiver. FDIC sold the loan to First Boston. First Boston entered into an agreement with National Mortgage Company

with a pay-off amount which, according to the complaint, "seemed high" to them. The Mulligans asked for and received an amortization schedule. According to the affidavit of plaintiff Robert J. Mulligan, this was "the first time[ ] we became aware of NMC's claim that the loan provided for a balloon payment." Mr. Mulligan concedes that the stated interest rate was 10.5 percent. He maintains, however, that, to him, "the essential terms were the amount of the loan, the amount of the monthly payment and the 25–year term of repayment."

In order to complete the refinancing while maintaining their position that the balloon payment was improper, the Mulligans paid the full amount demanded by NMC into the registry of the Montgomery County Circuit Court and obtained a judicial release of the mortgage lien. The precise nature of the proceedings in Montgomery County are not of record here, but it appears that plaintiffs sued both RTC and NMC in Maryland; that RTC was dismissed on jurisdictional grounds there; that the question whether NMC is a proper party defendant is now pending before the Maryland Court of Special Appeals; that the funds deposited to secure the judicial release of lien remain on deposit in the Circuit Court for Montgomery County; and that neither RTC nor NMC has affirmatively sought to recover the pay-off amount. At oral argument on the instant motion, counsel explained that if NMC prevails in the Maryland Court of Special Appeals, the Mulligans will be entitled to the return of their deposit from the registry of the Court because the underlying lawsuit will have been dismissed. In that event, their original mortgage will not be released, however, so that the Mulligans could find themselves with two unpaid mortgage loans against their residence.

In this Court, the Mulligans have sued only Resolution Trust Corporation.[2] They invoke 12 U.S.C. § 1821(d)(6) in support of their claim of federal jurisdiction. They seek damages in the amount of approximately $53,000, plus "consequential damages ... for the resultant increase in market interest rate upon refinancing occasioned by the delay in refinancing caused by the defendant's actions," plus prejudgment interest, costs and attorneys fees. Their complaint is stated in five counts: (1) violation of the truth in lending laws; (2) breach of the Mulligans' original contract with NBW; (3) violations of Maryland consumer credit laws by NMC, as servicer of the note, allegedly "ratified, endorsed and adopted" by RTC; (4) equitable reformation of the original note to reduce its stated annual interest rate from 10.5 percent to 9.8949 percent, in effect providing for the 25–year payoff the Mulligans say was their original deal; and (5) misrepresentation by NBW in connection with the making of the original mortgage loan.

RTC moves for summary judgment on numerous grounds: failure to state a claim against RTC because FDIC and not RTC was appointed receiver for NBW; lack of pecuniary damages because plaintiffs had the use of the $275,000 for 14 years; failure to state a claim against either RTC or Boatmen's National Mortgage; failure to state a claim under the Truth In Lending Act or for breach of contract; and want of subject matter jurisdiction as to the state consumer protection law claim.

### ANALYSIS

◼ It is unnecessary to deal with the RTC's assertion that plaintiffs' Truth In Lending Act complaint seeks to impose a "civil ... penalty" from which RTC is immune, see 15 U.S.C. § 1612(b), or to deal with the question of whether RTC can be held liable for a Truth In Lending Act violation as an assignee, see 15 U.S.C. § 1641(a), because the Mulligans filed their action for Truth In Lending Act violations about 13 years after the statute of limitations expired. An action seeking actual damages as a result

(now Boatmen's National Mortgage, Inc.) for the servicing of the loan. The First Boston agreement with the FDIC was then assigned to Standard Federal. Standard Federal then became insolvent and entered into a conservatorship with RTC. On June 30, 1995, RTC was appointed receiver for Standard Federal. At the present time, RTC owns the loan and NMC (now Boatmen's) is employed to service it.

2. NMC was permitted to intervene as a defendant.

of a failure to comply with the requirements imposed by the Truth In Lending Act

"may be brought in any United States District Court ... within one year from the date of the occurrence of the violation."

15 U.S.C. 1640(e). Plaintiffs do not argue for the application of equitable tolling principles to this very clear provision. There is scattered case authority for the proposition that the starting point for the limitation period is the date when the consumer is put on notice of a violation, see *Baskin v. Fox & Co.*, 550 F.Supp. 64 (D.C.Conn.1982), or that fraudulent lender concealment of Truth In Lending Act violations might toll the statute, see *Hubbard v. Fidelity Federal Bank*, 824 F.Supp. 909 (C.D.Calif.1993); *Jones v. TransOhio Sav. Ass'n.*, 747 F.2d 1037 (6th Cir.1984). These doctrines are not raised by the pleadings or by the record in this case, however. The likelihood of success on any such theory in this case would be remote in any event: Counsel for the Mulligans effectively conceded away any claim of lender concealment when he stated, at oral argument, that his claim rests entirely on the documents and on the law; and, as for equitable tolling, the parties agree that plaintiffs were provided with annual loan and escrow statements that showed the remaining balance due on the loan for each of the more than one dozen years in which the plaintiffs made loan payments. Indeed, at oral argument on the instant motion, counsel for the plaintiff did not contend for equitable tolling. Instead, he urged that the Court should take care to avoid issuing an order that would preclude plaintiffs' use in Maryland courts of the second sentence of the Truth In Lending Act limitations provision 15 U.S.C. 1640(e):

"This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation *as a matter of defense by recoupment or set-off*

in such action, except as otherwise provided by State law." (Emphasis added.)

Accordingly, because the Truth In Lending Act claim was not brought within one year, its use as the basis for an affirmative claim is barred by the statute of limitations and must be dismissed.

■ Plaintiffs' other claims—for breach of contract, misrepresentation, and reformation—are without merit.[3] The note and the deed of trust are not ambiguous and on their face plainly contemplate a balloon payment. The plain and unambiguous meaning of the instruments is controlling. *Washington Metropolitan Area Transit Authority v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C.Cir.1980). The admittedly incorrect Truth In Lending Act disclosure statement is not admissible as parol evidence that plaintiffs and the National Bank of Washington had a different contract than is reflected by the note and the deed of trust. *American Research Bureau v. E–Systems, Inc.*, 663 F.2d 189, 198 (D.C.Cir.1980) (applying Maryland parol evidence rule); Md.Com.Law Code Ann. § 2–202 (1975). The breach of contract claim thus cannot be sustained.

■ Successful prosecution of a civil claim of misrepresentation requires proof of intent to mislead, and plaintiffs has conceded that they have no such proof.

■ A mistake of fact can be the basis for reformation of a contract, but the mistake must be mutual. "Mistake" in the law of contracts refers to a belief that is not in accord with the facts as they stood at the time the contract was made. An allegation by one party to a contract that he or she was mistaken about the mathematical result of the application of a stated interest rate to a stated principal amount over a stated number of years will not support reformation for mutual mistake of fact.

■ This suit is reduced then only to plaintiffs' claim against National Mortgage

---

3. These claims are governed by Maryland law: the deed of trust contains a provision that "the Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located." Def.Motion for Sum.J., Exhibit B. The note appears to have been executed in Washington, D.C.,

but because the Mulligans are Maryland residents and the property is located in Maryland, the most significant contacts are with Maryland. *See* Restatement (2d) Conflict of Laws § 188(1) (1969).

Company for violation of Maryland consumer credit laws.[4] The Mulligans and NMC are both residents of Maryland. Their claim against NMC is thus non-diverse, and I have no jurisdiction to decide it.

An order will issue with this memorandum dismissing the complaint for failure to state a claim upon which relief may be granted as to defendant RTC and for want of subject matter jurisdiction as to defendant NMC.

## ORDER

For the reasons stated in a memorandum issued today, the complaint in this action is **dismissed** for failure to state a claim upon which relief may be granted as to defendant Resolution Trust Corporation and for want of subject matter jurisdiction as to defendant National Mortgage Company.

---

4. The grant of original jurisdiction to this Court under 12 U.S.C. § 1821(d)(6) extends only to the claim against RTC. NMC was allowed to intervene in this Court by my exercise of supplemental jurisdiction under 28 U.S.C. § 1367 because NMC shared a common nucleus of operative fact with defendant RTC. It is statutorily mandated that this Court cannot retain jurisdiction over a supplemental claim when it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).