Monica J. HUBBARD, fka Monica J. Roegler; Earle S. Humphreys; Nicette M. Humphreys, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

FIDELITY FEDERAL BANK, fka Fidelity Federal Savings and Loan Association, Defendant–Appellee.

No. 93–56052.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 1995.

Decided July 25, 1996.

As Amended on Denial of Rehearing Oct. 2, 1996.

Peter M. Racher, Plews, Shadley, Racher & Braun, Indianapolis, IN, and M. Scott Barrett, Lawrence Walner & Assoc., Chicago, IL, for plaintiffs-appellants.

Martin C. Washton and Alicia J. Bentley, Gibson, Dunn & Crutcher, Los Angeles, CA, for defendant-appellee.

Before BROWNING, D.W. NELSON and HAWKINS, Circuit Judges.

PER CURIAM:

Monica Hubbard and Earle and Nicette Humphreys appeal a grant of summary judgment in their breach of contract, fraud, and Truth in Lending Act ("TILA") class action against Fidelity Federal Bank. We affirm in part, reverse in part, and remand.

## I.

In November, 1983, Hubbard obtained a $94,000 adjustable-rate mortgage loan from Fidelity Federal Bank. The interest rate was to be adjusted semi-annually, on June 1 and December 1, based on "the most recent" monthly weighted costs of savings, borrowings and advances by the Federal Home Loan Bank of San Francisco to the 11th District members of the bank. Payment amounts were to be adjusted only once a year, on January 1. Fidelity agreed to provide "notice of an adjustment to the payment amount at least 30 but not more than 45 days before it becomes effective."

---

1. In February, 1986, Earl and Nicette Humphreys borrowed $152,000 from Fidelity under a written contract virtually identical to Hubbard's, except the interest rate changed on September 1 and March 1 of each year, and the payments were adjusted twice each year, on October 1 and April 1. In 1986, Fidelity sent the Humphreys a notice 35 days before the payment change date. In 1987, Fidelity changed this practice, and sent the Humphreys notice 65 days before the payment change date.

2. The plaintiffs do not appeal the district court's grant of summary judgment on their negligence claims.

For the first two years, Fidelity sent Hubbard payment adjustment notices approximately 35 days before January 1, the date fixed by the contract for changes in the amount of the payment. After two years, Fidelity changed this practice, and sent Hubbard payment adjustment notices approximately 65, rather than 35, days prior to January 1. On August 22, 1991, Fidelity wrote Hubbard, attributing the change to a revision in federal regulations. Contrary to Fidelity's letter, federal regulations had not changed.

On July 1, 1992, Hubbard sued on behalf of herself and a class of Fidelity borrowers, alleging breach of contract, Truth In Lending Act ("TILA") violations, and negligence. The Humphreys[1] joined the suit on March 28, 1993, and Hubbard and the Humphreys added a fraud claim. The district court granted summary judgment in favor of Fidelity on all claims. *Hubbard v. Fidelity Federal Bank,* 824 F.Supp. 909 (C.D.Cal. 1993). Hubbard and the Humphreys appeal.[2]

## II. Breach of Contract

A. *Hubbard's Loan Contract.*[3]

1. The parties agree Hubbard's loan should be interpreted in light of the applicable regulations of the Federal Home Loan Bank Board. Hubbard argues the regulations as they read in 1982 governed her loan contract. Fidelity contends the regulations as they read in 1983 applied.

When Hubbard obtained her loan, Fidelity was authorized to make loans under the regulations as they read in *either* 1982 or 1983. *See* 12 CFR § 545.33(i)(2) (1983). Interpret-

---

3. We do not agree with the district court's view that Hubbard's breach of contract and TILA claims are mutually exclusive. 824 F.Supp. at 914–15. Hubbard argues Fidelity breached its contract by calculating the interest incorrectly and sending notices on the wrong dates. Hubbard also argues that, although all of the contract terms may be determined using state law principles of contract construction, Fidelity's disclosures were not sufficiently clear or accurate to satisfy TILA.

ing the loan in light of the 1982 regulations, Hubbard argues the payment adjustment "became effective" on January 1 of each year, the date Hubbard began to make the adjusted payments. *See* 12 CFR § 545.6–4a(e) (1982). Thus, Hubbard argues, the loan required Fidelity to give notice of any payment adjustment 30–45 days before January 1.[4]

The district court rejected Hubbard's interpretation as unworkable because it would require Fidelity "to review the applicable index one day and on the next day adjust the interest rate and the payment amount, and send Hubbard the requisite notice of all the changes in the loan calculations." 824 F.Supp. at 916. Interpreting the contract consistently with the regulations as they read in 1983, the district court concluded the payment adjustment "became effective" on December 1, the date the interest rate changed, not on January 1, when Hubbard started making the adjusted payments. 12 CFR § 545.33(e)(4) (1983). Thus, the district court determined the contract required Fidelity to give Hubbard notice 30–45 days before December 1. 824 F.Supp. at 915.

On the record at summary judgment, we cannot reject Hubbard's interpretation of the date the payment adjustment "became effective" as unworkable. Hubbard contended Fidelity could have issued the notices within the available time, and Fidelity did not present conclusive evidence to the contrary.

Because both interpretations are consistent with the regulatory scheme, and the contract terms are "reasonably susceptible" of either interpretation, the contract is ambiguous. *Santa Clara v. Watkins,* 984 F.2d 1008, 1012–13 (9th Cir.1993). On remand, a trier of fact must determine the parties' intent by weighing, inter alia, Fidelity's claim of impracticality against Hubbard's evidence that Fidelity unilaterally changed its interpretation after first adopting Hubbard's. *Laborers Health and Welfare Trust Fund v. Kaufman & Broad,* 707 F.2d 412, 418 (9th Cir.1983) (noting that course of performance under a contract "is to be given great weight" in interpreting an ambiguous contract).

■ 2. Fidelity's August 22, 1991 letter to Hubbard was misleading and tended to dissuade Hubbard from suing and therefore tolled the statute of limitations on Hubbard's breach of contract claims. However, no evidence suggests Fidelity concealed its alleged breach *before* it sent the letter; Hubbard's claims for breaches committed prior to August 22, 1987, are therefore barred. Cal.Civ. Proc.Code § 337(1).[5]

## B. *The Humphreys' Contract.*

■ We agree with the district court that the 1986 regulations governed the Humphreys' loan. These regulations required Fidelity to give notice 30–120 days before changing the interest rate. *See* 12 CFR § 545.33(e)(4) (1986). The Humphreys' contract is consistent with the 1986 regulations only if it required Fidelity to send notice to the Humphreys 30–45 days *before* the interest rate change date. The Humphreys pres-

---

**4.** The regulations, as they read in 1983, state that "[f]or purposes of notification, a payment adjustment is considered to occur as of the date of the interest-rate change immediately preceding the due date of the adjusted payment." 12 CFR § 545.33(e)(4) (1983). Thus, under the regulations as they read in 1983, notice would be due no less than 30 days before December 1. It can be argued that the applicable regulations did not change in 1983, but were merely clarified, and that even under the 1982 regulations, notice was due no less than 30 days before December 1. We reject this position. As Hubbard notes, "the most recent" index used to calculate the new interest rate under the regulations as they read in 1982 would have been the most recent index as of December 1, the date the interest rate changed. *See* 12 CFR § 545.6–4a(c)(1) (1982) (stating that the interest rate adjustment must

depend on the index "most recently available *as of the date of rate adjustment*") (emphasis added). Because Fidelity could not have determined what this index was unless it issued the notice on or near December 1, we conclude that the 1982 regulations, which required notice no less than 30 days before "adjustment of the payment," required notice no less than 30 days before January 1. 12 CFR § 545.6–4a(e) (1982).

**5.** Hubbard argues the statute of limitations did not begin to run until she discovered the breach. However, Hubbard could have discovered the alleged breach through reasonable diligence. Fidelity did nothing to conceal its method of calculating interest rates before it sent the August 22 letter.

ent no evidence that, during the four years preceding this lawsuit, Fidelity either failed to send notice within this 30–45 day window or failed to use the most recent index as of the date it sent the notice.

The district court properly granted summary judgment for Fidelity on the Humphreys' breach of contract claim.

### III. Truth in Lending Act

#### A. *Initial Disclosures.*

■ TILA's one-year statute of limitations, 15 U.S.C. § 1640(e), bars plaintiffs' claims that Fidelity failed to make appropriate initial disclosures under 12 CFR § 226.18(f)(1) (1983) and 12 CFR § 545.33(f)(7) (1986). Hubbard filed suit more than eight years after she obtained her loan, and the Humphreys joined suit six years after they obtained theirs. Hubbard argues the statute of limitations should have been tolled until she discovered "there were possible 'anomalies' or errors in her loan." However, nothing prevented Hubbard from comparing the loan contract, Fidelity's initial disclosures, and TILA's statutory and regulatory requirements.[6] *See King v. State of Cal.,* 784 F.2d 910, 915 (9th Cir.1986).

#### B. *Subsequent Disclosures.*

■ TILA regulations required Fidelity to make disclosures that "reflect the terms of the legal obligation between the parties." 12 CFR § 226.17(c)(1). Thus, Fidelity's yearly payment adjustment notices were required to reflect the loan agreement. The district

court held that because Fidelity did not breach Hubbard's loan contract, it did not violate § 226.17. 824 F.Supp. at 918. However, as noted above, there is an unresolved issue of disputed fact as to whether Fidelity breached Hubbard's loan contract and miscalculated the interest rates and payment amounts. If the issue is resolved in Hubbard's favor, Fidelity's yearly payment adjustment notices did not "reflect the terms of the legal obligation between the parties," and Fidelity violated TILA.[7]

Ordinarily, Hubbard would have one year from each inaccurate disclosure to file suit. 15 U.S.C. § 1640(e). Because no evidence suggests Fidelity attempted to conceal its alleged breach of contract before it sent the letter, any TILA claims for inaccurate disclosures before August 22, 1990 are barred.[8] However, Fidelity's misleading August 22, 1991 letter tolled the statute of limitations, and Hubbard may sue for any inaccurate notice of payment adjustment after August 22, 1990.

Because the Humphreys presented no evidence that Fidelity breached their contract, the district court properly granted summary judgment for Fidelity on the Humphreys' claim under § 226.17.

### IV. Fraud

■ Plaintiffs raised no triable issue of fact as to fraud. Fidelity's payment adjustment notices disclosed the index values employed and the resulting interest rate changes. While the record suggests Fidelity

---

6. Fidelity's August 22, 1991 letter does not suggest Fidelity attempted to conceal the alleged inadequacy of the initial disclosures.

7. Fidelity argued that it is not liable under 12 CFR § 226.17(c)(1) because this subsection only applies to disclosures before consummation of the transaction under § 226.17(b). However, § 226.17 refers to general disclosure requirements; the requirements contained therein apply to any disclosures made under TILA. As Fidelity was required to send notice of payment adjustments under 12 CFR § 545.33(e)(4), these notices had to reflect the terms of the legal obligation. If Fidelity breached Hubbard's contract, the notices did not reflect the terms of the legal obligation and Fidelity violated TILA.

8. The district court held Fidelity should have issued an entire set of new disclosures because it

both "increase[d] the rate based on a variable-rate feature that was not previously disclosed," and "add[ed] a variable-rate feature to the obligation" when it shifted the dates 30 days in 1987. 12 CFR Part 226, Supp. I at § 226.20(a) (1986). Assuming, arguendo, that Fidelity's 30 day date shift in 1987 added a variable-rate feature and therefore required new disclosures, any suit on this claim is barred by the one-year statute of limitations. 15 U.S.C. § 1640(e).

Neither Hubbard nor the Humphreys state a claim under 12 CFR § 226.20(a), which requires an entire new set of disclosures "when an existing obligation ... is satisfied and replaced by a new obligation undertaken by the same consumer." Neither Hubbard nor the Humphreys allege they satisfied their debts and agreed to a new loan contract.

**80**

may have erred in processing the loans, it does not suggest Fidelity defrauded plaintiffs. No one, including Fidelity, could accurately forecast whether the shift in dates would make or lose money for Fidelity. *See Marketing West v. Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603, 613, 7 Cal.Rptr.2d 859 (Cal.Ct.App.1992) (listing elements of fraudulent concealment). Fidelity's August 22, 1991 letter creates at most an inference that Fidelity attempted to conceal and explain a mistake, not that it sought to defraud its borrowers.

AFFIRMED IN PART AND RE-VERSED IN PART, with each party to bear its own costs.