**Lillian GARCIA,**

v.

**WACHOVIA MORTGAGE CORPORATION a North Carolina corporation; Golden West Savings Association Service, Co., a California Corporation; and Does 1 through 10, inclusive, Defendant.**

Case No. 2:09–cv–03925–FMC–FMOx.

United States District Court, C.D. California.

Oct. 14, 2009.

Carlo O. Reyes, Law Offices of Carlo O. Reyes, Canoga Park, CA, for Lillian Garcia.

Christopher Alan Carr, Robert A. Bailey, Anglin Flewelling Rasmussen Campbell and Trytten, Pasadena, CA, for Defendant.

ORDER GRANTING WACHOVIA MORTGAGE, FSB'S MOTION TO DISMISS FIRST AMENDED COMPLAINT, AND DENYING AS MOOT WACHOVIA MORTGAGE, FSB'S MOTION TO DISMISS COMPLAINT

FLORENCE–MARIE COOPER, District Judge.

The matter is before the Court on Wachovia Mortgage, FSB's ("Wachovia" or "Defendant") Motion to Dismiss (docket no. 12), filed on July 21, 2009, and on Wachovia's Motion to Dismiss (docket no. 24), filed on September 14, 2009. The Court has read and considered the moving and opposing documents (there has to date been no reply) submitted in connection with this motion. The Court deems the matter appropriate for decision without oral argument. *See* FED. R. CIV. P. 78; Central District of California, Local Rule 7–15. The hearing scheduled for October 26, 2009 is removed from the Court's calendar. For the reasons and in the manner set forth below Defendant's Motion to Dismiss (docket no. 24) is GRANTED and Defendant's Motion to Dismiss (docket no. 12) is DENIED AS MOOT.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is the owner of a principal dwelling known as 533 Redfield Avenue, Los Angeles, CA 90042 (the "Property"), has resided therein at all relevant times, and still does reside therein. (*See* FAC, ¶ 5.) At some point prior to February 21, 2008, Plaintiff was contacted by "Defendants regarding the refinancing of h[er] mortgage loan." (*See* FAC, ¶ 14–15.)

On or about February 21, 2008 Plaintiff entered into the relevant mortgage transaction, (*See* FAC, ¶ 14.) and executed a Deed of Trust, and an Adjustable Rate

Note (*see* FAC, ¶ 18, Exs. 2–3.) The Adjustable Rate Note is in the amount of $440,000.00 with an initial interest rate of 7.740%, and a maximum of 11.950%, and the amount "secured by the Deed of Trust is $550,000.00." (*See* FAC, ¶ 19, Exs. 2–3.) "Defendant Wachovia was the originating Lender." (*See* FAC, ¶ 6.)

A demand letter was sent on March 12, 2009 requesting rescission and offering to tender. (*See* FAC, ¶ 37, Exs. 7–8.) A letter titled "RESPA Qualified Written Request; TILA Request; Notice of Rescission" was sent to Wachovia on March 9, 2009. (*See* FAC, ¶ , Exs. 9.)

On June 2, 2009 Plaintiff filed suit against Defendants, alleging claims for relief for: (1) rescission under the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA") and 12 CFR part 226 et seq. ("Regulation Z"); (2) damages and other apparent forms of relief under TILA and Regulation Z; (3) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"); (4) violation of California's so-called "Unfair Competition Law," California Business and Professions Code § 17200 et seq.; and (5) quiet title. Plaintiff demanded a jury trial.

On July 21, 2009, Defendant Wachovia filed a Motion to Dismiss this Complaint (docket no. 12), noticed for hearing on September 14, 2009. On August 25, 2009 the Court continued the hearing date to October 5, 2009, after Plaintiff failed to file timely opposition. On August 31, 2009, Plaintiff filed an Opposition to the Motion to Dismiss (docket no. 19), yet also filed a "First Verified Amended Complaint for Damages and Declaratory Relief," (the "FAC") with multiple exhibits attached

(docket no. 23). The FAC purported to be verified, but contained no verification. The FAC asserted the same five claims as the Complaint did, and added a new claim under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"). On September 1, 2009 the Court allowed the First Amended Complaint to be filed.

On September 14, 2009 Wachovia filed a Motion to Dismiss the First Amended Complaint (docket no. 24),[1] which Plaintiff opposed on October 5, 2009 (docket nos. 27–28), including at that time a verification as an exhibit to the opposition.

## II.  LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to seek dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Dismissal is proper where a complaint lacks a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988). All material factual allegations in the complaint are assumed to be true and construed in the light most favorable to the plaintiff. *Nursing Home Pension Fund, Local 144 v. Oracle Corp.,* 380 F.3d 1226, 1229 (9th Cir.2004) ("The general rule for 12(b)(6) motions is that allegations of material fact made in the complaint should be taken as true and construed in the light most favorable to the plaintiff.") (citing *Burgert v. Lokelani Bernice Pauahi Bishop Trust,* 200 F.3d 661, 663 (9th Cir.2000)). However, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those

---

1. The Court advised Plaintiff on September 1, 2009 that further failure to comply with the Local Rules may lead to penalties pursuant to Local Rule 83–7. The Court did not at that time deny the pending Motion to Dismiss (docket no. 12), which pertained to the Com-

plaint that has now been superseded by the FAC. The Court now looks to the FAC, and to the Motion to Dismiss and other papers filed in connection with the FAC. Accordingly, the previous Motion to Dismiss (docket no. 12) is DENIED AS MOOT.

conclusions cannot be reasonably drawn from the facts alleged." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir.1994) (citations omitted); see also *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

In ruling on a 12(b)(6) motion, a court generally cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). See, e.g., *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir.2005). A court may, however, consider exhibits submitted with the complaint. *Knievel,* 393 F.3d at 1076; see also *Van Winkle v. Allstate Ins. Co.,* 290 F.Supp.2d 1158, 1162 n. 2 (C.D.Cal.2003). A "court may [also] consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir.2006) (citations omitted). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998) (superseded by statute on other grounds as recognized in *Abrego Abrego v. The Dow Chemical Co.,* 443 F.3d 676, 681–82 (9th Cir.2006)).

In addition, a "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation,* 823 F.Supp. 715, 720 (E.D.Cal.1993) (citing *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987)). Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.,* 245 F.2d 67, 70 (9th Cir.1956); see also *Estate of Blue v. County of Los Angeles,* 120 F.3d 982, 984 (9th Cir.1997).

If the Court dismisses the complaint, it must decide whether to grant leave to amend. Denial of leave to amend is "improper unless it is clear that the complaint could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940, 946 (9th Cir.2005) (citation omitted). However, the district court's discretion to deny leave to amend is broader where the plaintiff has previously filed an amended complaint. *Miller v. Yokohama Tire Corp.,* 358 F.3d 616, 622 (9th Cir.2004) ("Where the plaintiff has previously filed an amended complaint, ..., the district court's discretion to deny leave to amend is 'particularly broad.' ") (quoting *Chodos v. W. Publ'g Co.,* 292 F.3d 992, 1003 (9th Cir.2002)).

## IV. DISCUSSION

### A. Claim for Rescission Under TILA and Regulation Z

Plaintiff seeks rescission because of Defendant's alleged failure to provide accurate TILA disclosures. Because of the way the Court resolves this issue, it need not recite all the disclosure violations alleged by Plaintiff. (*See generally, without limitation* FAC, ¶¶ 19–33, 36, 42.) Defen-

dant argues Plaintiff's claim must be dismissed because Plaintiff has failed to allege an ability to tender loan proceeds. Because the Court finds in favor of Defendant, this Claim is DISMISSED WITHOUT PREJUDICE.

TILA requires that loan documents state specifically the last date on which a borrower may rescind the loan agreement without penalty. *Semar v. Platte Valley Federal Sav. & Loan Ass'n,* 791 F.2d 699, 701 (9th Cir.1986) (citing 15 U.S.C. § 1635(a) and former 12 C.F.R. § 226.23(b)). "TILA's 'buyer's remorse' provision allows borrowers three business days to rescind, without penalty, a consumer loan that uses their principal dwelling as security." *Semar,* 791 F.2d at 701; 15 U.S.C. § 1635(a).[2] TILA and its Regulation Z require the lender to provide a form stating the specific date on which the three-day rescission period expires. *Semar,* 791 F.2d at 701 (citing 15 U.S.C. § 1635(a)). If the lending institution omits the expiration date and fails to cure the omission by subsequently providing the information, the borrower may rescind the loan within three years after it was consummated. *Semar,* 791 F.2d at 701–02 (citing 15 U.S.C. § 1635(f)).

By far, the majority of Courts to address the issue recently have required that borrowers allege an *ability* to tender the principal balance of the subject loan in order to state a claim for rescission under TILA. *See, e.g., Kratz v. Countrywide Bank,* No. CV08–01233, 2009 U.S. Dist. LEXIS 86479 *8, 2009 WL 3063077 *3 (C.D.Cal., Sept. 21, 2009); *Pesayco v. World Savings, Inc.,* CV 09–3926, 2009 U.S. Dist. LEXIS 73299 *3–5 (C.D.Cal., July 29, 2009); *ING Bank v. Korn,* No. C09–124Z, 2009 U.S. Dist. LEXIS 73329, 2009 WL 1455488 *1 (W.D.Wash., May 22, 2009) (dismissing, with leave to amend to state, subject to Rule 11's requirements, that the borrowers have the ability to tender principal); *Reganit v. Kay–Co. Invs.,* No. 2:09–cv–01120, 2009 U.S. Dist. LEXIS 34883 *3–4 (E.D.Cal., Apr. 24, 2009) (finding, in denying an application for a temporary restraining order, that success was unlikely in part because "Plaintiff has not indicated she is able to tender the requisite loan proceeds."); *Garza v. American Home Mortgage,* NO. CV F 08–1477, 2009 U.S. Dist. LEXIS 7448 *15, 2009 WL 188604, *5 (E.D.Cal., Jan. 27, 2009) ("The complaint fails to hint that Ms. Garza is able to fulfill her obligations under 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d). Rescission is an empty remedy without Ms. Garza's ability to pay back what she has received … [so][t]he complaint lacks a necessary element of Ms. Garza's TILA rescission claim. As such, the TILA rescission claim is dismissed with leave to amend to allege, subject to F.R.Civ.P. 11(b) requirements, that Ms. Garza has the ability to tender and pay back what she has received."); *Alcaraz v. Wachovia Mortg. FSB,* NO. CV F 08–1640, 2009 U.S. Dist. LEXIS 34009, 2009 WL 160308 *4 (E.D.Cal., Jan. 21, 2009).

At least one court has, by contrast, required (without analysis) that the Plaintiff

---

**2.** This three-day period may be extended as long as the lender fails to provide material disclosures, a point validly made by Plaintiff, but unnecessary to the decision here. *See LaGrone v. Johnson,* 534 F.2d 1360, 1362 (9th Cir.1976) ("We agree with the district court that the three omissions were material. The three-day period for rescission therefore did not run, and the notice of rescission filed by Mrs. LaGrone was timely.") (citing *Ljepava v. M.L.S.C. Properties, Inc.,* 511 F.2d, 935, 944 (9th Cir.1975); *Sosa v. Fite,* 498 F.2d 114, 118 (5th Cir.1974). *See* 12 C.F.R. § 226.23(a)(3) n. 48 (as amended, effective date October 1, 2009) as to what constitutes "material disclosures." Defendant does not argue in the Motion to Dismiss that the TILA rescission claim is time barred, and the court makes no holding on the issue.

merely allege a willingness to tender, or the existence of an offer to tender. *See, e.g., Shelley v. Quality Loan Serv. Corp.,* No.: SACV09–291, 2009 U.S. Dist. LEXIS 58156 \*5–6, 2009 WL 1740904 \*2 (C.D. Cal., June 17, 2009) ("Mr. Shelley has not alleged that he has made such an offer or contemplates making such an offer. Accordingly, Mr. Shelley's rescission claim under TILA fails as well."). The developing majority position is more appropriate, in light of Circuit case law,[3] as well as the statutory provisions, as described below.

Here, the FAC alleges a demand letter was sent on March 12, 2009 requesting rescission and offering to tender. (*See* FAC, ¶ 37.) A copy is attached as Exhibit 7 to the FAC. The FAC also alleges a "Qualified Written Request; TILA Request; Notice of Rescission" was sent on March 9, 2009, and this document is attached to the FAC as Exhibit 9. In the demand letter, Plaintiff's attorney stated he was "authorized by [his] client to rescind this transaction. . . ." He also stated that his clients "would like to discuss tender arrangements for the amount due (the amount financed less all loan charges and costs associated with the loan and all payments made to date) with you once you have effected rescission." (*See* FAC, Ex. 7; *see also* Opposition, at 5:3–12) The averment of an offer to tender is repeated elsewhere. (*See generally* FAC). However, even construed as generously as possible in favor of Plaintiff (*Nursing Home Pension Fund,* 380 F.3d at 1229), nowhere does the FAC indicate or allege an *ability* to tender.[4] Any rescission in which voiding of the transaction is sought without returning principal money loaned would deprive the lender of its legal due. If rescission cannot ultimately be accomplished without an ability to tender, then obligor/debtor must be able to allege some ability to do so in order to state such a claim.

■ Plaintiff further argues in the FAC (rather than alleges) that "Plaintiff may keep any money or property, and has no obligation to tender, until the Defendants have cancelled the mortgage lien, or security interest in the property, and return

---

**3.** *See e.g., LaGrone v. Johnson,* 534 F.2d 1360, 1362 (9th Cir.1976); *Powers v. Sims & Levin,* 542 F.2d 1216, 1222 (4th Cir.1976) ("What we do hold is that when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due."); *Rudisell v. Fifth Third Bank,* 622 F.2d 243, 254 (6th Cir.1980) ("[TILA] clearly does not require the debtor to tender first. It contemplates the creditor tendering first. But upon the creditor fulfilling its obligations under the statute, *the debtor then must tender.* Since rescission is an equitable remedy, the court may condition the return of monies to the debtor upon the return of property to the creditor.") (citations omitted) (emphasis added); *FDIC v. Dev. Co.,* 938 F.2d 889, 890 (8th Cir.1991) ("TILA generally provides that the creditor shall perform first (i.e., return monies paid by the debtor and release its security interest); however, the Act gives courts discretion to devise other procedures, 15 U.S.C. § 1635(b), including conditioning rescissions upon the debtor's prior return of the principal."). Defendant also cites to *Luciano v. Weyerhaeuser Mortg. Co.,* 200 Fed.Appx. 628, 630 (9th Cir. 2006); however, that opinion is not citable in this context, pursuant to Ninth Circuit Rule 36–3.

**4.** The FAC alleges that the tender demand requested "an itemization of the loan disbursements, the loan charges, the current principal balance, and all payments received . . . so that we may determine the exact amount needed for tender." (*See* FAC, ¶ 52, Ex. 7), and that because Wachovia did not respond "Plaintiff was not able to tender the exact and definite amount." Even though the court chooses to assume on this Motion that such information would not also be in the hands of a typical, reasonable borrower, there is still no allegation in the FAC of any *ability* to tender any amount whatsoever.

any money or property given to the Defendants or to anyone else in connection with this transaction." (See FAC, § 51.) Plaintiff addresses this in the Opposition as well (October 5 Opposition, at 5:1–3), and in neither place cites any authority. This argument simply helps negate any impression that Plaintiff has alleged an ability (or, indeed, willingness) to tender. In addition, such reasoning has been expressly negated by the Ninth Circuit. *See Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir.2003) ("[U]nder the statute and the regulation, the security interest 'becomes void' only when the consumer 'rescinds' the transaction. In a contested case, this happens when the right to rescind is determined in the borrower's favor.").

Plaintiff also argues that *Yamamoto*, 329 F.3d at 1173, cited above, makes an offer of tender discretionary (*see* October 5th Opposition, 5:12–28).[5] This court is not persuaded. The Circuit's reference to a decision lying "within the court's equitable discretion," is on its face a reference to the court's ability to alter the "sequence of procedures" before deciding rescission is warranted. In other words, a court may "do before trial what it could do after," when "as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.)." *Yamamoto*, 329 F.3d at 1173. The Circuit held that the court did not lack discretion

to "modify the *sequence* of rescission events to assure that Tampon could repay the loan proceeds *before* going through the empty (and expensive) exercise of a trial on the merits." *Yamamoto*, 329 F.3d at 1173 (emphasis added).

The discussion of order, sequence, and procedure in *Yamamoto* simply highlights an issue courts have grappled with since the inception of TILA, which is that the statute on its face originally appeared to require the voiding of a security interest earlier in time than the borrower's return of money or property loaned. As discussed by the Ninth Circuit in *Yamamoto*:

> TILA's provision permitting a court to modify procedures was added in 1980 as art of the Truth in Lending Simplification and Reform Act, Pub.L. No. 96–221, tit. VI § 612(a)(4), 94–Stat. 168, 175 (1980) (codified as amended at 15 U.S.C. § 1635(b) (1988)). *See Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1139–40 (11th Cir.1992) (explaining background). In turn, subsection (d)(4) was added to Regulation Z in 1981. These changes followed in the wake of decisions by this court and others which held that the statute *need not be interpreted literally as always requiring the creditor to remove its security interest prior to the borrower's tender of proceeds.*

*Yamamoto*, 329 F.3d at 1171 (citations omitted at end of quotation) (emphasis

5. The full relevant paragraph of the *Yamamoto* opinion states:

As rescission under § 1635(b) is an ongoing process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescis-

sion obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

*Yamamoto*, 329 F.3d at 1173.

added). Nothing in *Yamamoto* supports the proposition a court may not require a borrower rescinding a mortgage transaction and canceling a security interest to allege an ability to tender.[6]

This analysis also comports with the relevant statutory provisions themselves. Ignoring for a moment the procedural ordering issues addressed above, the relevant TILA rescission provision, 15 U.S.C. § 1635(b), which is titled *"Return of money or property following rescission,"* states that "[u]pon the performance of the creditor's obligations under this section, the obligor *shall tender* the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor *shall tender* its reasonable value." 15 U.S.C. § 1635(b) (emphasis added). Additionally, 12 C.F.R. § 226.23(d)(3) of implementing Regulation Z states that "[w]hen the creditor has complied with [paragraph (d)(2) of this section], the consumer *shall tender* the *money or property* to the creditor or, where the *latter* would be impracticable or inequitable, *tender* its reasonable value." 12 C.F.R. § 226.23(d)(3) (emphasis added). Examination of a statute begins with the words of the statute itself. *See Ein-*

*stein/Noah Bagel Corp. v. Smith (In re BCE West, L.P.)*, 319 F.3d 1166, 1170–71 (9th Cir.2003) ("Our analysis under the general rules of statutory construction begins with the language of the statute itself.") (citation omitted).[7] The statute and implementing regulation, Regulation Z, both substantively contemplate *mandatory* tender at some procedural point. Regulation Z makes this completely mandatory as to money (which Plaintiff here has previously received in the form of a loan), while appearing to qualify the obligor's return of property with an equitable option of returning the property's reasonable value.[8] The broader statutory scheme does not contradict this. Multiple cases have agreed. *See, e.g., Merriman v. Beneficial Mortgage Co. of Kansas, Inc. (In re Merriman)*, 329 B.R. 710, 718 (Bankr.D.Kan. 2005) (recognizing the "reciprocal payment obligations" of the lender and borrower under TILA Section 1635(b) and Regulation Z Section 226.23(d)); *Kratz*, 2009 U.S. Dist. LEXIS 86479 at *8, 2009 WL 3063077 at *3; *see also Rudisell*, 622 F.2d at 254. In short, therefore, and for all of the above reasons, Plaintiff must allege (subject to Rule 11) an ability to tender in order to state a claim for rescission under

---

6. *See also In re Wepsic*, 231 B.R. 768, 776 (S.D.Cal., 1998) ("[T]he Court finds that Wepsic's proposal of treating Josephson's claim as unsecured, and paying her over the course of three or more years, cuts against the purpose of rescission which is to return both parties to the status quo ante."); *Quenzer v. Advanta Mortgage Corp. USA*, 288 B.R. 884, 888 (D.Kan.2003) ("[W]ithin the meaning of [TILA], 'rescission' does not mean an annulment that is definitively accomplished by unilateral pronouncement, but rather a remedy that restores the status quo ante.").

7. "Of course, that does not mean that we limit ourselves to the provision in perfect isolation. We must, instead, construe that provision with the statutory scheme in which it is embedded." *In re BCE West, L.P.*, 319 F.3d at 1170.

8. The Court notes that language in a great many cases appears garbled, admittedly, because cases speak of equitably conditioning "the rescission," even though what they really are talking about is equitably modifying the conditioned procedural *order* in which TILA says a rescission will place. *See, e.g., FDIC v. Hughes Development Co., Inc.*, 938 F.2d 889, 890 (8th Cir.1991). But as previously discussed, while not a model of clarity in some respects, the statutory and regulatory language at issue do seem to state fairly clearly, irrespective of whether or not a security interest is terminated before or after a tender, that money received by borrowers "shall" be tendered back at some procedural point.

TILA and Regulation Z. Plaintiff's first claim for relief for rescission under TILA and Regulation Z is accordingly DISMISSED WITHOUT PREJUDICE, because Plaintiff failed to do so.

## B. Claim for Damages Under TILA and Regulation Z

■ Plaintiff second asserts a claim for damages and fees under TILA and Regulation Z. Defendant argues this claim is time-barred. Because of the way the Court resolves this issue, it need not recite all violations alleged by Plaintiff. (*See generally, without limitation*, FAC, ¶¶ 19–33, 36, 42, 58–65) This claim will also be DISMISSED, WITHOUT PREJUDICE, because on the facts alleged by Plaintiff, it is time-barred.

Claims for damages, fees and costs based upon a TILA violation are governed by the one-year statute of limitations period provided by TILA. *See* 15 U.S.C. § 1640(e); *Hallas v. Ameriquest Mortgage Co.*, 406 F.Supp.2d 1176, 1183 (D.Or.2005) (citation omitted). "[A]s a general rule the limitations period [provided in section 1640(e) ] starts at the consummation of the transaction." *King v. State of California*, 784 F.2d 910, 915 (9th Cir.1986). It is clear from the face of the FAC that Plaintiff has missed the one-year statute of limitations and must rely on equitable tolling. Plaintiff alleges in the FAC the mortgage transaction closed on or about February 21, 2008. Plaintiff filed this lawsuit on June 2, 2009. Ordinarily, the one-year statute of limitations would bar the claim.

Plaintiff further alleges and argues, however, that the one-year statute of limitations should be equitably tolled (*see* FAC, ¶ 66–67; October 5 Opposition, at 6:21–7:2), while Defendant argues Plaintiff has not alleged facts supporting equitable tolling.

■ "Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" *O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068 (9th Cir.2006) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)). "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir.2000) (stating that equitable tolling focuses on excusable delay by the Plaintiff). "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Santa Maria*, 202 F.3d at 1178; see also *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir.1999) ("Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time") (citation omitted).

In the context of TILA damages, the Ninth Circuit has written that "the district courts, . . . , can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly." *King*, 784 F.2d at 915. "[E]quitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *Id.*

Defendant points to *Hubbard v. Fidelity Federal Bank*, 91 F.3d 75, 79 (9th Cir.

1996) as well, in the TILA context. There the Ninth Circuit wrote that the one-year statute of limitations was not tolled as to all initial TILA disclosures because "nothing prevented [plaintiff] from comparing the loan contract, Fidelity's initial disclosures, and TILA's statutory and regulatory requirements." *Hubbard*, 91 F.3d at 79. This is another way of saying that the mere existence of TILA violations and lack of disclosure does not itself equitably toll the statute of limitations. This is sensible, because it is in line with the generally applicable principles of equitable tolling, and because a contrary rule would render the one-year statute of limitations meaningless, as it would be tolled whenever there were improper disclosures. *See also Cardiello v. The Money Store, Inc.*, 2001 U.S. Dist. LEXIS 7107, 2001 WL 604007, at \*15–16 (S.D.N.Y. June 1, 2001) (holding equitable tolling requires "fraudulent conduct beyond the nondisclosure itself") (quoting *Pettola v. Nissan Motor Accept. Corp.*, 44 F.Supp.2d 442, 450 (D.Conn. 1999) (citing four other cases holding the same)); see also *Kelley v. Galveston Autoplex*, 196 F.R.D. 471, 478 (S.D.Tex.2000).

The Ninth Circuit also wrote that the one-year statute of limitations was not tolled as to *subsequent* disclosures before a certain date, August 22, 1987, because "no evidence suggest[ed] Fidelity attempted to conceal its alleged breach of contract before" that date (*Hubbard*, 91 F.3d at 79). On that date, Fidelity had sent a letter falsely attributing its change in payment-adjustment-noticing to a revision in federal regulations that had not in fact ever taken place, which could have misled Plaintiff about the possibility of asserting a claim. *Hubbard*, 91 F.3d at 77.

Here, there is nothing in the FAC alleging either that the Defendant fraudulently concealed information that would have allowed Plaintiff to discover her claim, nor is there any allegation of any other actions by Defendant affirmatively preventing the Plaintiff from discovering a claim, nor is there any other allegation of extraordinary circumstances that would have made it reasonable for the Plaintiff not to discover her claim. This court does not hold that only fraudulent conduct by a Defendant can give rise to equitable tolling (*see Santa Maria*, 202 F.3d at 1178), but on the face of the FAC no other reasonable grounds appear to exist for Plaintiff to have failed to discover the alleged TILA disclosure violations within the one-year statute of limitations.

■ Rather, the entirety of Plaintiff's explicit allegations in the FAC in support of an equitable tolling argument are that "a[ll] these [TILA disclosure] violations came only to the attention of the Plaintiff after she came to consult with her counsel and who subsequently sent demand letter containing rescission notice and offer to tender to Defendant Wachovia which failed to respond." (*See* FAC, ¶ 67.) That is not enough. Under *Hubbard*, "nothing prevented [plaintiff] from comparing the loan contract, [the lender's] initial disclosures, and TILA's statutory and regulatory requirements." *Hubbard*, 91 F.3d at 79. To be sure, there are numerous allegations of serious TILA disclosure violations (*see, e.g., without limitation*, FAC, ¶¶ 19–21; 30–33; 35–36; 42–44; 58–65). One particular allegation is that the Truth in Lending Disclosure Statement dated February 14, 2008 stated the amount financed was $430,030.80 while the amount on the Note is $440,000.00. (*See* FAC, ¶ 21, etc.) However, the mere allegation of TILA disclosure violations does itself not toll the statute. *Hubbard*, 91 F.3d at 79.[9]

---

9. One allegation by Plaintiff deserves a more detailed response in this regard. First, Plaintiff makes a serious allegation that the promissory note and the deed of trust for the mortgage transaction listed different amounts.

For these reasons, the FAC has not stated facts plausibly indicating any basis for tolling the statute of limitations, and this claim will be dismissed without prejudice. See *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir.2000) ("The district court may grant a 12(b)(6) motion to dismiss on statute of limitations grounds only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled" (internal quotations and citations omitted)).[10]

## C. Claim for Violation of RESPA

Plaintiff also claims damages for violations of Sections 2605 and 2607 of RESPA. Plaintiff is suing under Section 2607 for "acts of splitting of fees for referral, kickbacks, illegal fees, unearned and duplication fees." (*See* FAC, ¶ 70–71; Exhibit 5. And Plaintiff is also suing under Section 2605, alleging failure by the Defendant to respond to a Qualified Written Request, as defined in the statute. (*See* FAC, ¶ 73.) Defendant argues 1) the claim under Section 2607 is barred by the statute of limitations; 2) the alleged Qualified Written Request does not in fact qualify as one under the statute; and 3) plaintiff has failed to allege damages, and so her RESPA claims fail. (Defendant appears to conflate the Plaintiff's 2605 and 2607 claims in making its statute of limitations argument.)

RESPA damages claims under Section 2607 are subject to a one-year limitations period that accrues at closing, while claims under 2605 are subject to a three-year statute of limitations. 12 U.S.C. § 2614; *see also Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359 (5th Cir.2003) ("The Secretary of Housing and Urban Development, state attorneys general, and state insurance commissioners may sue within

*See* FAC, ¶ 21 (stating "the amount of the loan in the Note dated February 21, 2008 was $440,000.00, the amount secured by the Deed of Trust dated February 21, 2008 was $550,000.00.); *see also* FAC, ¶ 19, 62. This might appear to rise to the level of fraudulence required for equitable tolling (though it is unclear whether it would represent a TILA violation). Still, Plaintiff calls this "the most glaring TILA violation of Defendants." (October 5 Opposition, 6:1–5.) Even to the extent such a discrepancy would relate to a TILA violation, and even to the extent, if so, that it would not have been apparent at the consummation of the transaction (*Hubbard*, 91 F.3d at 79), Plaintiff has attached the purported Note (exhibit 2) and the purported Deed of Trust (exhibit 3) to her FAC, and these documents controvert the alleged facts in the FAC. A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *See, e.g., Sumner Peck Ranch*, 823 F.Supp. at 720. The attached Deed of Trust in fact shows an "original principal amount of U.S. $440,000.00, plus accrued and deferred interest and such other amounts as stated in the Note." (FAC Exhibit 3, Deed of Trust, Part I(D).) The Note likewise is a promise to pay "U.S. $440,000.00, called 'Principal,' plus in-

terest, and any other charges incurred during the course of the loan." (FAC Exhibit 2, Page 1.) The $550,000.00 referenced by the Deed of Trust is the "maximum aggregate principal balance secured by this deed of trust" which is "125% of the original principal note amount." (FAC Exhibit 3, Deed of Trust, p. 1.) This is the analogue provision to Paragraph 3(F) of the Note, which provides "My unpaid principal balance can never exceed 125% of the Principal I originally borrowed." (FAC Exhibit 2, p. 3, paragraph 3(F).) Consequently, even to the extent a plaintiff would not notice such a "discrepancy" at the time of consummation of the transaction, the FAC's allegations, thus contradicted, do not give rise to the sort of fraud that might toll the limitations period.

10. Plaintiff also cites non-binding out-of-state and out-of-Circuit authority in the FAC, rather than in her Opposition, for the proposition that the one-year statute of limitations does not apply when TILA claims are asserted as a defense to a non-judicial foreclosure claim. At least one district court in this Circuit has recently reached the opposite conclusion. *See Ortiz v. Accredited Home Lenders, Inc.*, 639 F.Supp.2d 1159, 1164–65 (S.D.Cal.2009).

three years of any violation of RESPA. Private plaintiffs, too, have a three-year limitations period for suits alleging a violation of § 2605. Only for private plaintiffs suing under §§ 2607 and 2608 did Congress impose a one-year limitations period." (internal citations omitted)).

### 1) *Claim under RESPA Section 2607*

Here, Plaintiff is suing under Section 2607 for "acts of splitting of fees for referral, kickbacks, illegal fees, unearned and duplication fees." (*See* FAC, ¶ 70–71; Exhibit 5.) Plaintiff does not reply at all in her Opposition to Defendant's contention that the RESPA claims are time-barred. It is clear from the face of the FAC and the facts properly before the court at this juncture that Plaintiff has missed the one-year statute of limitations, as to Plaintiff's Section 2607 claims, and they are time-barred. Plaintiff alleges in the FAC the mortgage transaction closed on or about February 21, 2008. Plaintiff filed this lawsuit on June 2, 2009. Thus, the claim under Section 2607 is DISMISSED WITHOUT PREJUDICE.

### 2) *Claim under RESPA Section 2605*

■ Plaintiff also alleges violation of Section 2605, for failure to respond to a RESPA Qualified Written Request. (*See* FAC, ¶ 73; Exhibit 9.) This claim is subject to a three-year statute of limitations (*see* 12 U.S.C. § 2614) and is not time-barred. However, Defendant also asserts: 1) that Plaintiff has not alleged any damages resulting from the violation of Section 2605; and 2) that the alleged Qualified Written Request does not meet the statutory definition in any event.

The provisions of RESPA at issue provide in relevant part:

(1) Notice of receipt of inquiry

(A) In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days ... unless the action requested is taken within such period.

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 60 days ... after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—

. . . .

(C) after conducting-an investigation, provide the borrower with a written explanation or clarification that includes—

(i) information requested by the borrower or an explanation of why e information requested is unavailable or cannot-be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(1)(A), (e)(1)(B)(i) & (ii), & (e)(2)(C)(i) & (ii).

An individual prevailing on a claim that the above-quoted provisions of RESPA were violated is entitled to:

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

12 U.S.C. § 2605(f)(1)(A) & (B).

Here, construed in the light most favorable to Plaintiff, Exhibit 9 is a Qualified Written Request. A "qualified written request" is a written correspondence that enables the servicer to identify the name and account of the borrower and contains a statement of the reasons for the borrower's belief that the account is in error, *or* provides sufficient detail to the servicer regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B) (emphasis added). Exhibit 9 clearly indicates who the borrower is and provides the account number from the Note. Additionally, while the letter does not appear to contain a statement of the reasons for the borrower's belief that the account is in error, construed in the light most favorable to Plaintiff it provides sufficient detail regarding "other information" sought by the borrower. *See In re Thorian*, 387 B.R. 50, 70 (D.Idaho, 2008) (interpreting the terms "inquiry" and "request" as used in RESPA to mean "a 'request for information'" and "the 'act or instance of asking for something,'" respectively, and concluding that a QWR must "allege an account error or seek some information from the loan servicer"). Indeed, it appears to request a vast amount of information.

However, even construed in the light most favorable to Plaintiff, she has failed to allege damages under Section 2605. Notably, Plaintiff does explicitly alleges damages arising from the time-barred *Section 2607 claim.* (*See* FAC, ¶¶ 71–72 & 74.) With regard to Section 2605, however, Plaintiff first alleges "Damages may be awarded to the borrower for failure to respond to the RESPA QWR." (FAC, ¶ 73.). That is not a factual allegation of damage to Plaintiff; it is a conclusory statement of law. Second, Plaintiff alleges that the failure to respond to the Qualified Written Request, on its own, establishes enough facts to state a claim for damages under Section 2605(f)(1)(B) based on a "a pattern or practice of noncompliance with the requirements of this section." However, almost as a matter of definition, a single failure to respond to a Qualified Written Request does not state a claim for a "pattern or practice" of doing so. No other damage allegations in the FAC are incorporated by reference into this claim of Plaintiff (called a count by Plaintiff). To the extent that they were meant to be or could be, dismissal with leave to amend is appropriate. *See Kempe v. Monitor Intermediaries, Inc.*, 785 F.2d 1443, 1443 (9th Cir.1986) ("The third ground, Kempe's failure to incorporate mail and wire fraud allegations within the RICO count (although they were alleged separately) was readily correctable by amendment.").

Finally, Plaintiff has not addressed in her Opposition the arguments made in the Motion to Dismiss but has essentially pasted in the same allegations and improper legal arguments from the FAC. This appears to be a consent to the granting of the Motion on this issue. *See Connors v. Home Loan Corp.*, No. 08cv1134–L(LSP), 2009 WL 1615989 *8 (S.D.Cal. June 9, 2009).

Accordingly, the Section 2605 claim is also DISMISSED WITHOUT PREJUDICE, and thus the entire RESPA claim

alleged by Plaintiff is DISMISSED WITHOUT PREJUDICE.

### D. Claim Under the FDCPA

■ Plaintiff next alleges a claim under the FDCPA. Defendant argues that the claim must be dismissed because Plaintiff fails to articulate how Defendant is a "debt collector" under the act. This claim is DISMISSED WITHOUT PREJUDICE.

The FDCPA prohibits debt collectors from "making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); *Izenberg v. ETS Services, LLC*, 589 F.Supp.2d 1193, 1198 (C.D.Cal., 2008) ("To be held liable for violation of the FDCPA, a defendant must-as a threshold requirement-fall within the Act's definition of 'debt collector.' "). The FDCPA places certain limits on the actions of "debt collectors." 15 U.S.C. § 1692 et seq. Section 1692k of the FDCPA provides a private right of action to one aggrieved by a violation of the FDCPA. 15 U.S.C. § 1692k(d).

The term "debt collector" is defined in the Act as "any person ... in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another...." 15 U.S.C. 1692a(6); *see also Heintz*, 514 U.S. at 294, 115 S.Ct. 1489. The FDCPA provides for a number of *exceptions* from the term "debt collector." "The term [debt collector] *does not include—* ... (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement;

[or] (ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person[.]" 15 U.S.C. 1692a(6)(F)(i)-(iii) (emphasis added). In other words, these are *not* entities/persons who are debt collectors covered by the Act.

Nonetheless, Plaintiff boldly alleges and argues that Defendant is in fact liable as a debt collector under the FDCPA precisely because Defendant is "within the exception found in 15 U.S.C. § 1692(a)(6)(F)(iii)[11] since it concerns collection of debt of the Plaintiff already in default. It is a debt collector covered by [the] FDCPA." (FAC, ¶ 78; October 5 Opposition, at 7:24–27.) In fact, therefore, by Plaintiff's own direct allegation, Defendant is not a debt collector covered by the statute at all. *See also Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1031 (9th Cir.2009) (cited by Defendant, describing a defendant attempting to argue it was not a debt collector liable under the Act because it fell within one of the Section 1692(a)(6)(F) exceptions that Plaintiff here alleges Defendant falls into); *Izenberg*, 589 F.Supp.2d at 1193 (holding failure to allege Defendant is a debt collector defeats a FDCPA claim, and further holding that non-judicial foreclosure is not a collection of debt within the meaning of the FDCPA, citing (citing *Hulse v. Ocwen Fed. Bank, FSB*, 195 F.Supp.2d 1188, 1204 (D.Or.2002) and *Ines v. Countrywide Home Loans*, No. 08cv1267, 2008 WL 4791863, *2 (S.D.Cal. Nov. 3, 2008)). This claim is DISMISSED WITHOUT PREJUDICE.

### E. Claim Under Cal. B & PC 17200 et seq.

■ Plaintiff's claim under California Business & Professions Code 17200 et seq. is DISMISSED WITHOUT PREJUDICE. This claim is premised on viola-

---

11. There is no "15 U.S.C. § 1692(a)(6)(F)(iii)" and the court assumes, generously to the

Plaintiff, that she meant to make allegations relating to 15 U.S.C. § 1692a(6)(F)(iii).

tions of TILA (*see* FAC, ¶¶ 80, 98–100, 103), the FDCPA (*see* FAC, ¶¶ 80, 98), RESPA (*see* FAC, ¶¶ 80), California Civil Code § 1916.7(B) (*see* FAC, ¶ 90), California Civil Code § 1916(10)(c)II (*see* FAC, ¶ 91), California Civil Code Section "1918.5–1921.1920", and "California Civil Code § 1916.710(c)," (*see* FAC, ¶ 93). Defendant argues, at least with regard to the state statutory allegations, that this claim is preempted by the Home Owners Loan Act, 12 U.S.C. § 1461 *et seq.* ("HOLA") and its implementing regulations. Defendant further argues that Plaintiff's claims are preempted by TILA. (Motion, at 9:27–28 n. 1.)

▮▮▮▮ California Business and Professions Code § 17200 prohibits acts of unfair competition, including "any [1] unlawful, [2] unfair or [3] fraudulent business practice." Unlawful practices are any activities that are forbidden by law. *Samura v. Kaiser Foundation Health Plan, Inc.*, 17 Cal.App.4th 1284, 1292, 22 Cal. Rptr.2d 20 (1993). Unfair acts are those that "offend[ ] an established public policy" or are "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Podolsky v. First Healthcare Corp.*, 50 Cal.App.4th 632, 647, 58 Cal. Rptr.2d 89 (1996) (internal quotations and citations omitted). "Virtually any state, federal or local law can serve as the predicate for an action under § 17200." *Id.*

▮▮▮ First, it must be noted as a matter of bookkeeping that to the extent Plaintiff's predicate federal statutory claims under TILA, RESPA and FDCPA

are time barred and/or otherwise dismissed, as analyzed above, Plaintiff's state statutory Section 17200 claim predicated on these federal statutory violations likewise must necessarily fail and must also be dismissed without prejudice because they do not state an "unlawful" UCL claim. *See,* e.g., *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir.2000) ("A court may not allow plaintiff to plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition.") (internal quotation marks omitted); *Rubio v. Capital One Bank (USA)*, 572 F.Supp.2d 1157, 1168 (C.D.Cal.2008) (finding that since plaintiff's TILA claim failed, plaintiff's UCL claim predicated on TILA likewise failed); *see also Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001); *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citation omitted). Thus, the court need not address Defendant's argument that TILA preempts a UCL claim that is based on failure to disclose information or materials required by TILA.

▮▮▮ The remainder of Defendant's preemption argument is focused on the state law claims, which Defendant argues are preempted by HOLA.[12] HOLA was

---

12. Defendant has asked the court to take judicial notice: 1) of other cases that treated Wachovia Mortgage, FSB as a federal savings bank, regulated by the Office of Thrift Supervision, and subject to HOLA; 2) of a certificate of existence from the OTS; 3) of a letter from the OTS; and 4) of a web page printout from an FDIC website, indicating Defendant is regulated by the OTS. The court doubts that it can judicially notice the truth of a fact

accepted by a court in another case (as opposed to the existence of the case, or its outcome), or that it can judicially notice facts contained simply in a webpage printout from a federal website, or facts contained in a letter sent by a federal agency (as opposed to the formal findings or official publications of a federal agency). However, Defendant's status as a federal savings bank subject to HOLA is not challenged by Plaintiff this time, either

enacted by Congress to charter savings associations under federal law, *Bank of America v. City and County of S.F.*, 309 F.3d 551, 559 (9th Cir.2002), cert. denied, 538 U.S. 1069, 123 S.Ct. 2220, 155 L.Ed.2d 1127 (2003), and to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide "best practices." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 160–161, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). HOLA and its regulations are a "radical and comprehensive response to the inadequacies of the existing state system," and "so pervasive as to leave no room for state regulatory control." *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979), aff'd, 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (citations omitted). "[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." *Bank of America*, 309 F.3d at 559 (internal quotation marks omitted).

Moreover, through HOLA, "Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing thrifts." *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir.2008) (citing 12 U.S.C. § 1464). OTS promulgated 12 C.F.R. § 560.2 ("section 560.2") as a preemption regulation, which " 'has no less preemptive effect than federal statutes.' " *Silvas*, 514 F.3d at 1005 (quoting *de la Cuesta*, 458 U.S. at 153, 102 S.Ct. 3014). Section 560.2(a) provides in pertinent part:

.... OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section ....

Section 560.2(b) provides "the types of state laws preempted" by section 560.2(a) include:

(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees ...

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

in the FAC, or in Plaintiff's Opposition to Defendant's Motion, and the court declines at this time to take judicial notice of the documents attached to Defendant's Request for Judicial Notice or of the facts therein. *See, e.g., Rivera v. Wachovia Bank*, No. 09 CV 0433, 2009 WL 2406301 *1 (S.D.Cal., Aug. 4, 2009).

Additionally, Defendant does not appear to challenge that Plaintiff states a claim under the state statutes, or challenge the fact that Plaintiff stated its claim for them only within her UCL claim for relief. The Court therefore assumes for the purpose of evaluating the Motion that Plaintiff states a claim under the state law statutes.

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

As noted by the Ninth Circuit Court of Appeals in *Silvas*, 514 F.3d at 1005 and 1005 n. 1, the OTS has described the correct analysis when evaluating whether a state law is preempted under this regulation:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis ends there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

OTS, Final Rule, 61 Fed.Reg. 50951, 50966–67 (Sept. 30, 1996).

Section 560.2(c) provides that the types of state laws "not preempted to the extent that they only incidently affect the lending operations of Federal savings associations" include, contract, commercial, real property and tort law.

Here, as argued by Defendant, the claims relating to the loan's negative amortization features and teaser rates, and failure to provide adjustable rate mortgage disclosure notice, brought pursuant to California Civil Code § 1916.7 and/or "1916.710(c)" are preempted by 12 C.F.R. § 560.2(b)(4) and (b)(9). The claim pursuant to California Civil Code § 1916.10 for improper failure to downwardly adjust a mortgage is rate is preempted by 12 C.F.R. § 560.2(b)(4) as well. The claims relating to notification of changes in inter-est rate brought pursuant to California Civil Code § "1918.5–1921.1920" are preempted by 12 C.F.R. § 560.2(b)(4) as well. To the extent Plaintiff makes claims relating to inability to qualify for the loan she was given, these are preempted by 12 C.F.R. § 560.2(b)(10). The court can identify no state law claims alleged within the UCL claim that are not preempted by some portion of 12 C.F.R. § 560.2(b). *See, e.g., Coyotzi v. Countrywide Financial Corp.*, No. CV F 09–1036, 2009 WL 2985497 *14 (E.D.Cal., Sept. 16, 2009). As Plaintiff may or may not be able to amend, subject to Rule 11, to allege Defendant is not regulated by HOLA (*see* footnote 12), Plaintiff's claims herein based on these state statutory provisions are dismissed WITHOUT PREJUDICE. For the above reasons, Plaintiff's Claim for Relief under Section 17200 et seq. is DISMISSED WITHOUT PREJUDICE.

## F. Claim for Quiet Title

Finally, Plaintiff alleges a quiet title claim. Plaintiff does not cite any statutory or other basis for this claim, either in her FAC or in her Opposition to the Motion to Dismiss. However, Defendant cites California Code of Civil Procedure § 762.010 et seq. as the relevant statutory hook. Construing the FAC to benefit Plaintiff, based on the allegations of this Claim, the court concludes Plaintiff intends to bring this Claim under the above statutory provision. This claim is dismissed WITHOUT PREJUDICE, as Plaintiff has alleged no ability to tender.

The purpose of a quiet title action is to determine "all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to." *Newman v. Cornelius*, 3 Cal.App.3d 279, 284, 83 Cal.Rptr. 435 (1970) (citation omitted). California Code of Civil Procedure § 760.010 pro-

vides for an action "to establish title against adverse claims to real or personal property or any interest therein," and section 761.020 mandates a verified complaint that includes: 1. A legal description and street address of the subject real property; 2. The title of plaintiff as to which determination is sought and the basis of the title; 3. The adverse claims to the title of the plaintiff against which a determination is sought; 4. The date as of which the determination is sought; and 5. A prayer for the determination of the title of the plaintiff against the adverse claims. CAL.CODE CIV. PROC. § 761.020.

 In order to allege a claim to quiet title, Plaintiff must allege ability to tender the amounts admittedly borrowed. *Arnolds Mgmt. Corp. v. Eischen,* 158 Cal. App.3d 575, 578, 205 Cal.Rptr. 15 (1984); *Miller v. Provost,* 26 Cal.App.4th 1703, 1707, 33 Cal.Rptr.2d 288 (1994) (citations omitted) ("[A] mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee.") (citations omitted); *see also Connors v. Home Loan Corp.,* 2009 U.S. Dist. LEXIS 48638, 2009 WL 1615989, at *7 (S.D.Cal.2009) ("In the absence of allegations of ability to tender indebtedness and foreclosure irregularities, plaintiff's quiet title claim fails."); *Pesayco v. World Savings, Inc.,* CV 09–3926, 2009 U.S. Dist. LEXIS 73299 *3–5 (C.D.Cal., July 29, 2009). As previously discussed, Plaintiff has failed to allege an ability to tender. Thus, Plaintiff's quiet title claim is DISMISSED WITHOUT PREJUDICE to Plaintiff's right to amend.

## V. CONCLUSION

Therefore, Motion to Dismiss (docket no. 12) is DENIED AS MOOT. The Motion to Dismiss (docket no. 24) is GRANTED IN FULL and Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.[13] Plaintiff shall have twenty (20) days in which to file a Second Amended Complaint ("SAC"). Failure to timely file a SAC within 20 days will result in the *sua sponte* dismissal of this action with prejudice.

**IT IS SO ORDERED.**

---

13. The court notes that while its discretion to dismiss with prejudice is broad in connection with ruling on a motion to dismiss a First Amended Complaint (*see Miller,* 358 F.3d at 622), here it does not face a standard such situation where a Plaintiff has drafted its First Amended Complaint in the wake of a prior Order granting a motion to dismiss.